Barfield vs. The State.

---

JOHN BARFIELD, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] If there are two persons of the same name, and one of them signs that name to notes, with the intention that the notes may be used, in trade, as the notes of the other, it is forgery.

[2.] The 1st, 9th and 14th sections of the seventh division of the penal code, will, perhaps, each apply to the case of obtaining goods by passing a forged note. An indictment was founded on the 14th.

Barfield vs. The State.

*Held,* That as that was the latest section, and as the punishment it prescribes is the lightest, it, at least, was operative.

Indictment for obtaining chattels by color of counterfeit writing. Tried before Judge WORRILL, in Taylor Superior Court, April Term, 1859.

The substance of the testimony submitted to the jury on the trial of this case was as follows: On the 9th of March, 1859, the plaintiff in error, John Barfield, and Warren Barfield, went to the house of John Hudson, in the county of Taylor, and proposed to buy a mule from Hudson. Hudson declined to sell the mule, because it belonged to his son Roland. John Barfield then proposed to buy the pony of John Hudson, saying he had one hundred and fifty dollars in good notes on Slaughter Hill. Hudson asked Barfield if Slaughter Hill was the brother of Archer Hill (Archer Hill was known by Hudson to be a man of property.) Barfield answered that he was; but said that Slaughter Hill was worth five times as much as Archer. Upon this representation, Hudson sold Barfield his pony, and a cow and a calf, for the notes, as follows:

" $50. By the twenty-fifth of December next, I promise to pay John Barfield, or bearer, fifty dollars, for value received.

his

(Signed)    SLAUGHTER ⋈ HILL.

mark.

March 7th, 1859."

" 100. By the twenty-fifth of December next, I promise to pay John Barfield, or bearer, one hundred dollars, for value received.

his

(Signed)    SLAUGHTER ⋈ HILL.

mark.

March 7th, 1859.

These notes were, in fact, not the notes of Slaughter Hill, the brother of Archer Hill, but were signed by a boy who had no property, and who lived with Alex. Barfield. Slaughter Hill, the brother of Archer Hill, writes his name, and does not make his mark. This boy, Slaughter Hill, was not known by John Hudson. It was proven that John Barfield said that he and Alexander Barfield "had got in with the boy, Slaughter Hill, to give the note so he could buy a horse with it," and that Alex. Barfield was to give the boy, Slaughter Hill, a suit of clothes for signing the notes, and that he (John) was to keep the horse until fall, and then to sell him and divide the money with Alex. Barfield; that the object was to get Roland Hudson's mule, but as he could not get that he thought he had as well take old John's pony; that it was "a damned smart trick;" that somebody had to work for a living, and it had as well be old John as any one else; that he (John Barfield) had made one hundred and fifty dollars clear, and would not give his pocket-knife for the notes; and that if old Mr. Hudson would pay him for a week's work and one night's sleep that he had lost in devising the trick, he would let him have the pony back.

The Court, among other things, charged the jury, that to find the defendant guilty of the accusation contained in the bill of indictment, they must be satisfied that the notes, which had been read to them on the trial, had been shown to be forged and counterfeit. That if they believed it had been shown that the defendant procured the boy, Slaughter Hill, to make said notes, with the intent to use them to purchase property of the prosecutor, or any other person, by creating the impression, or inducing the belief that they were made by Slaughter Hill, the brother of Archer Hill, who was well known to be a man of property, when he knew that the boy was poor and without means, then the notes are forged and counterfeit, just as much so as if defendant had written the name of Slaughter Hill, the brother of Archer Hill, to them.

Counsel for the prisoner asked the Court to charge the jury, that before the notes could be considered counterfeit, the jury must be satisfied from the evidence that the notes were not signed by a person named Slaughter Hill, but by the prisoner, or by some other person, without the consent of the party whose name appears to the notes. That if it was proven that a person by the name of Slaughter Hill did sign the notes, then the notes are not counterfeit letters or writings, and the case for the State is not made out, and the prisoner not guilty. That if the notes are genuine, and signed by a person named Slaughter Hill, it does not matter whether Barfield paid anything for them or not: which the Court refused to do; and thereupon the defendant excepted.

The jury found the prisoner guilty. At the same Term the counsel for Barfield moved for a new trial, on the following grounds:

1st. Because the Court charged the jury as stated above.

2d. Because the Court refused to charge as stated above.

3d. Because the offence charged in the bill of indictment is unknown to the penal code of this State,

4th. Because the verdict is contrary to law.

5th. Because the verdict is strongly and decidedly against the weight of evidence.

The Court refused to grant the new trial, and counsel for Barfield excepted, and now assign such refusal for error.

MAY; HUNTER, for plaintiff in error.

Solicitor General ELAM; GRICE & WALLACE; EDWARDS, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

The motion for a new trial embraces all of the exceptions in the case. The question, therefore, whether the Court be-

low was right in refusing that motion, will include all the questions in the case.

[1.] The first ground of the motion was the charge of the Court. That charge amounts to this: that if the defendant procured Slaughter Hill, the boy, to make the notes, with the intention to use them in the purchase of property, as the notes of another Slaughter Hill, the brother of Archer Hill, the notes were forged.

The evidence showed that the notes were made by Slaughter Hill, the boy; that he was not quite twenty-one years old; that he lived with a brother of the defendant; that he was destitute of property; that the defendant and his brother " got in with the boy Slaughter Hill, to give the notes, so he (the defendant) could buy a horse with them;" and that the brother was to give the boy a suit of clothes for signing the notes. It is clear from this that the boy was cognizant of the defendant's purpose to use the notes, as the notes of some other man than himself. There can be little doubt but that he knew that they were to be used as the notes of the other Slaughter Hill.

The charge must be construed in reference to these facts. It must, therefore, be treated as a charge to this effect: that if the defendant procured Slaughter Hill, the boy, to make the notes, with the intention to use them in the purchase of property as the notes of another Slaughter Hill, the brother of Archer Hill, *and the boy made them, cognizant of this intention*, the notes were forged.

The charge thus treated, the question becomes this: if there are two persons of the same name, and one of them signs that name to notes, with the intent that the notes may be used in trade, as the notes of the other, is the act a forgery?

And we think that it is, according to the authorities. These are, *Brown's case*, stated in 1*st Archbold Pl. and Ev.; Mead vs. Yung*, 4 *Term R.* 28, 6 *Cow.* 72.

As to Brown's case, it was argued that it was distinguish-
able from the present in this : that the Brown there intended
to be forged on, was a fictitious person.   But that distinc-
tion rather makes against the party insisting on it—Bar-
field·—for if it was a forgery to use the  name of a fictitious
person, how much more would it have been a forgery if the
name used had been the name of a real person—of another
real Brown.

The case of *Hevey,* (also stated in *Archbold,*) is not in
conflict with these.   In that case, Barnard McCarty was a
real person; and the endorsement which he made, he made
as his own endorsement.   All that Hevey did was to *person-
ate* McCarty, in reference to this endorsement.

We find no fault with the charge.

If the charge given was right, it is clear that the charge
requested was wrong.   The refusal of the charge requested
was the second ground of the motion.

The third ground was, that the offence charged was un-
known to the penal code.

This ground is, we think, not true.   The fourteenth sec-
tion of the seventh division of the penal code very plainly
provides for the offence charged.

The fourth ground was that the verdict was contrary to
law.

The seventh division of the penal code has three sections—
the first, the ninth, and the fourteenth, each of which, per-
haps, makes the facts stated in the indictment a crime.
Those facts I can give only in general terms, the indictment
not being, as I write, within my reach, it not having been
sent up in the record, and the copy, or original, used at the
argument of the case, not being now among the papers of
the case.   The facts were, however, in general terms, that
Barfield, by color of forged notes, obtained a horse, and a
cow and calf, from Hudson, with intent to defraud him.
This statement is much the same, if not quite the same, as
a statement to this effect: that Barfield, falsely and fraudu-

Barfield vs. The State.

lently, *uttered, published, passed* the notes, &c.; and as a statement, that he *uttered and published, as true,* the notes, &c., of which statements the first would have brought the indictment under the ninth section; and the second would have brought it under the first section.

These things being so, it was insisted that none of the sections could be operative, and, therefore, that the verdict was contrary to law.

[2.] We think not.   We think that even if the three sections are all alike, in the respect in question, yet that the one, at least, on which this indictment was founded, is operative; and for two reasons: that section is the latest, the punishment it prescribes is the lightest.

The fifth and last ground was, that the verdict was contrary to the evidence.

We think that there is nothing in this ground.   The whole validity of the ground turns upon a nicety of expression in the indictment.   The question is, whether the notes proved were the same as the notes described; and the question depends entirely on the import of an expression in the indictment.   That expression I will not venture to try to recall by memory; and as the indictment itself is not at hand, I must let the decision on this point pass without stating the reasons for it.

None of the grounds appearing to us to be good, we must affirm the judgment.

Judgment affirmed.

Judge STEPHENS absent on account of sickness in his family.