## C. STUART BEATTIE

### *v.*

## THE NATIONAL BANK OF ILLINOIS.

174    571
199   ³165

*Opinion filed October 24, 1898.*

1. BILLS AND NOTES—*endorsement by a party knowing he is not the payee is a forgery.* An endorsement of a bill of exchange, negotiable only by endorsement, by a party who knows he is not the real payee though he bears the same name, is a forgery.

2. NAMES—*law does not recognize a middle initial as part of a name.* An endorsement of a bill of exchange, payable to order, by a person who bears the name inserted as payee but who knows he is not the real payee, is no less a forgery because the real payee's middle initial differs from the endorser's, which corresponds to the one inserted in the bill.

3. BANKS—*bank may refuse payment of bill endorsed by party who is not the real payee.* One who in good faith purchases a bill of exchange payable to order, and endorsed by a party having the same name as the real payee but who is not the person intended as payee, acquires no title, and cannot recover against the bank on which the bill is drawn upon its refusal to pay the same on the ground that the endorser was not the real payee.

*Beattie v. National Bank of Illinois*, 69 Ill. App. 632, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

This suit was originally begun before a justice of the peace and taken by appeal to the circuit court of Cook county. In the circuit court the cause was submitted by agreement to be tried by the court without a jury. The finding of the court was against the appellant here, who was the plaintiff below, and in favor of the appellee here, who was the defendant below. Judgment was rendered upon the finding, which was for an amount less than $1000.00. An appeal was taken to the Appellate Court. The Appellate Court has affirmed the judgment of the circuit court, and granted a certificate of importance.

There is no controversy as to the facts. The case was tried upon a stipulation as to the facts, which were substantially as follows:

On September 15, 1891, one George P. Bent of No. 223 Canal street, Chicago, sent for collection to the First National Bank of Council Bluffs, Iowa, a note for $133.50, made by a man by the name of Max Bournicus. On September 28, 1891, the First National Bank of Council Bluffs collected the note, and on the same day made its draft for $133.25 on the National Bank of Chicago, Illinois, to the order of George A. Bent, Chicago. The draft was made payable to the order of George A. Bent, instead of George P. Bent, by mistake. It was mailed to George A. Bent, Chicago, Illinois. George P. Bent was intended to be made the payee in the draft; George A. Bent never had any business transactions with appellee, the drawee, or with the First National Bank of Council Bluffs, the drawer of the draft. The latter bank was never indebted to George A. Bent. A man, named George A. Bent, received the draft from the post-office, and endorsed upon it his own name, George A. Bent, and sold it to the appellant. The facts tend to show, that the appellant purchased the draft in good faith, relying upon one Beach, a broker, whom he knew, although he was not acquainted with George A. Bent, the supposed payee in the draft. After purchasing the draft the appellant deposited it for his own account in the Bank of Commerce in Chicago, which cleared through the Union National Bank of Chicago. The draft was paid by the appellee bank through the Union National Bank. The appellee returned the draft to the National Bank of Council Bluffs, and it was there discovered that George A. Bent had received the draft intended for George P. Bent. Affidavits, setting up the facts and the mistake which had occurred, were made and attached to the draft; and the draft, with the affidavits so attached, was returned to the appellee. The appellee returned the draft to the Union National Bank,

which redeemed it under the rules of the clearing house. The Union National Bank presented it to the Bank of Commerce, and the latter bank took it up, and required the appellant to make the same good. The appellant took the draft to the appellee bank, and, ascertaining that the appellee had funds in its hands belonging to the First National Bank of Council Bluffs, the drawer of the draft, demanded payment; but payment was refused by appellee on the alleged ground that the endorsement of the payee was a forgery.

Six propositions were submitted by the appellant, the plaintiff below, to the trial court to be held as law in the decision of the case. Two of these were marked held, two were marked refused, and two were modified, and marked held after being thus modified. The trial court, of its own motion, made in writing and held affirmatively a proposition, holding that no right of action existed against the appellee, the National Bank of Illinois, and declined to hold whether or not the First National Bank of Council Bluffs was liable. Proper exceptions were taken to the action of the court.

HARRY VINCENT, for appellant.

ARNOLD HEAP, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question, presented by this record, is within a very narrow compass. It is, whether a party, holding a draft under a forged endorsement of the payee therein, or what amounts to a forged endorsement, can compel the drawee to pay him the draft.

It is established clearly by the evidence, that the George A. Bent, who took the draft from the post-office and endorsed his name upon the back of it, was not the real payee, to whom the drawer of the draft intended to

make it payable. It is true, that the real and intended payee and real owner of the draft was named George P. Bent; but the fact, that the name of the real owner and the name of the fraudulent possessor of the draft differ, so far as the middle letter of the name is concerned, does not make the case other than a case, where the name of the real payee and the name of the assumed payee are the same. This is so, because the law does not regard the middle initial letter as a part of a person's name, but only recognizes one christian name of a party. (*Thompson* v. *Lee*, 21 Ill. 241; *Erskine* v. *Davis*, 25 id. 251; *Miller* v. *People*, 39 id. 457; *Bletch* v. *Johnson*, 40 id. 116; *Humphrey* v. *Phillips*, 57 id. 132).

Where a bill is payable to the order of a person, and another person of the name of the payee gets hold of it, and endorses it to a party who takes it in good faith and for value, such party acquires no title to the bill. (*Cochran* v. *Atchison*, 27 Kan. 728). If the endorsement so made by a person who is not the real payee, but has the same name as the real payee, is made by such person with full knowledge that he is not the real payee, and with intent to perpetrate a fraud, his endorsement cannot be regarded otherwise than as a forgery.

In *Barfield* v. *State*, 29 Ga. 127, it was held that, where there were two persons of the same name, and one of them signed that name to certain notes with the intention that the notes might be used in trade as the notes of the other, it was a forgery.

Blackstone (4 Com. 247) defines forgery to be the fraudulent making or alteration of a writing to the prejudice of another man's right. "One may be guilty of forgery if he fraudulently signs his name, although it is identical with that of the person who should have signed. Thus, if a bill of exchange is payable to A B, or order, and it comes to the hand of a person named A B who is not the payee, and who fraudulently endorses it for the purpose of obtaining the money, this is a forgery."

(*United States* v. *Long*, 30 Fed. Rep. 678). Where an endorsement is made for the purpose of being fraudulently used as the endorsement of another person, it is falsely made. The falsity of the act consists in the intent that the endorsement shall pass and be received as that of some other party; and, in such case, the charge of forgery can be maintained, although the signature is of a name, which might lawfully be used by the person, who put it on the draft or bill of exchange. (*Commonwealth* v. *Foster*, 114 Mass. 311).

In *People* v. *Peacock*, 6 Cow. 73, where certain coal was consigned to George Peacock of New York, and arrived there, and was claimed by another of the same name, who resided in the same city, but was not the true consignee; and he, knowing this, obtained an advance of money on endorsing the permit for the delivery of the coal with his own proper name, it was held that this was forgery.

Nothing is better settled than that a forged endorsement does not pass title to commercial paper negotiable only by endorsement, and does not justify the payment of such paper. Here, whether the endorsement of the payee's name was technically a forgery, or was merely a spurious and false endorsement, in either case it was inoperative to change the title to the instrument. (*Graves* v. *American Exchange Bank*, 17 N. Y. 205). In *Graves* v. *American Exchange Bank*, *supra*, it was held that the drawee of a bill of exchange is bound to ascertain that the person to whom he makes payment is the genuine payee, or is authorized by him to receive it; that it is no defense against such a payee, that the drawee, in the regular course of business with nothing to excite suspicion, paid the bill to a holder in good faith and for value under an endorsement of a person bearing the same name as the payee. There it was said by the court: "The defendants, on whom the draft was drawn, paid it upon the endorsement of another Charles F. Graves, residing at or near LaSalle, who wrongfully took it from the post-office

at Mendota. Such a payment, although made in good faith, did not divest or impair the title of the true owner, who had not seen or endorsed the paper."

In *Mead* v. *Young*, 4 Term Rep. 28, the action was brought by the endorser of a bill of exchange against the acceptor, the bill having been drawn by one Christian on the defendant in London, payable to Henry Davis or order; and, having been put into the foreign mail enclosed in a letter from Christian, it got into the hands of another Henry Davis than the one in whose favor it was drawn; the defendant accepted the bill, and it was discounted by the plaintiff; it was held, that it was competent for the defendant to prove that the person, who endorsed to the plaintiff, was not the real payee, though he was of the same name, and though there was no addition to the name of the payee on the bill; and it was also held that, if a bill of exchange payable to A or order got into the hands of another person of the same name with the payee, and such person, knowing that he was not the real person in whose favor it was drawn, endorsed it, he was guilty of a forgery. In that case, Ashhurst, J., said: "In order to derive a legal title to a bill of exchange it is necessary to prove the handwriting of the payee, and, therefore, though the bill may come by mistake into the hands of another person though of the same name with the payee, yet his endorsement will not confer a title." In the same case Bullard, J., said: "I am of opinion that it is incumbent on the plaintiff, who sues on a bill of exchange, to prove the endorsement of a person to whom it is really payable. * * * Now here it is clear, that the endorsement was not made by the same H. Davis to whom the bill was made payable; and no endorsement by any other person will give any title whatever."

In the case at bar, when the appellant presented the draft for payment to the appellee, the latter had a right to know that the appellant held the draft under a genuine

endorsement. When the appellant presented the draft for payment, it had been ascertained that the endorsement was forged, or at all events spurious and false, and was therefore void. No title passed by it, and if the appellee had made payment to the appellant, appellee could have been compelled again to pay the draft to the true owner thereof. Daniel, in his work on Negotiable Instruments, says: "The maker of a note or the acceptor of a bill must satisfy himself, when it is presented for payment, that the holder traces his title through genuine endorsements; for if there is a forged endorsement, it is a nullity, and no right passes by it. And payment to a holder under a forged endorsement would be invalid as against the true owner, who might require it to be paid again. * * * The payor should also satisfy himself of the identity of the holder; for he cannot defend himself against the real payee by showing, that he paid the amount of the bill or note to another person of the same name in good faith and in the usual course of business." (2 Daniel on Neg. Inst. 4th ed. sec. 1225). So, also, Randolph, in his work on Commercial Paper, says: "Where a bank holds a note or bill for collection under a forged endorsement and collects and pays it over to its principal, it will still be liable to the real owner for the amount collected. * * * So, if a bill is endorsed by another person in the payee's name and paid to the holder under such endorsement, the payee may recover such payment." (3 Randolph on Com. Paper, sec. 1469).

It follows from the authorities thus referred to, that the appellant, having no title to the draft, was not entitled to recover the amount thereof from the appellee.

If, without knowledge of the real character of the endorsement of the draft by the supposed payee named therein, the appellee had paid the amount of the draft to the appellant, it could have recovered such amount back from the appellant. This results from the fact that "the endorser contracts that the bill or note is in every re-

spect genuine, and neither forged, fictitious nor altered."
(1 Daniel on Neg. Inst.—4th ed.—sec. 672). Tiedeman, in
his work on Commercial Paper, says: "Inasmuch as the
endorser also warrants that he has a perfect title to the
paper by endorsement, and is liable if his title proves
defective, and since no title passes on a forged endorse-
ment, it follows as a necessary consequence that the
endorser must warrant the genuineness of the prior en-
dorsements." (Sec. 259). Randolph, in his work on Com-
mercial Paper, says: "Since the endorser warrants the
genuineness of prior endorsements, payment, made by the
drawee to an endorser holding under a forged endorse-
ment, may,be recovered from such holder." (Sec. 1469).
It was held in *Chambers* v. *Union Nat. Bank,* 78 Pa. St. 205,
that the holder of a draft, which is endorsed and passed
by him, guarantees the prior endorsements. In *Cochran* v.
*Atchison, supra,* where a bill was payable to W. W. Owens
and one W. W. Owen obtained possession of it and wrong-
fully endorsed it, it was held that a subsequent endorser
could not relieve himself from liability to his immediate
endorsee on the ground that the latter was guilty of neg-
ligence in taking the paper without the name of the ac-
tual payee endorsed thereon, upon the grounds that the
endorser guarantees the genuineness of the signature of
the payee, and that the difference in pronunciation be-
tween Owens and Owen was so slight as not to amount to
a variance. The court held generally in that case, that
an endorser warrants the genuineness of endorsements
on a bill of exchange. If, therefore, it be true that, upon
payment of the amount of the draft to appellant by ap-
pellee, a recovery could be had by appellee from the
appellant of the amount so paid, upon the ground that
appellant by his endorsement had guaranteed the genu-
ineness of the previous endorsement by George A. Bent,
it would be useless to hold that a right of recovery exists
in favor of the appellant against the appellee. To require

the appellee to pay an amount, which it could hereafter recover back again, would be an idle ceremony.

Counsel for appellant claims, that he has a right of action for negligence against the First National Bank of Council Bluffs, Iowa, because of the alleged carelessness of that bank, which was the drawer of the draft, in not mailing it properly to the payee named therein. In other words, it is said that, instead of addressing the letter enclosing the draft to George A. Bent of Chicago, it should have addressed it to George P. Bent of 223 South Canal street, Chicago. We do not deem it necessary to decide, whether or not an action will lie in favor of the appellant against the Iowa bank. This action is against the appellee bank, and it is sufficient to say that, so far as this record shows, the appellee was guilty of no negligence.

The judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*