# First National Bank v. George D. Pease and Edwin B. Pease.

1. BANKS AND BANKING—*Payment of Checks, Forged Indorsement.*
—Where a check is drawn payable to the order of an actually existing person or corporation. if the order or indorsement of such payee is forged, payment by the bank is no acquittance.

2. SAME—*Payment Otherwise than According to Directions.*—Where a depositor directs a payment to be made in a certain manner, a payment made otherwise than according to his directions is no discharge of the bank's obligation toward him.

**Assumpsit,** on the common counts.   Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding.   Heard in this court at the October term, 1896.   Affirmed.   Opinion filed February 1, 1897.

## STATEMENT OF THE CASE.

In May, 1893, Willis P. Baker, representing himself to be the agent of his mother, Charlotte A. Baker, applied to appellees, who were engaged in the business of loans and real estate, for a loan for his mother, on property where she resided, known as No. 457 Englewood avenue, Chicago. Appellees agreed to let her have $3,500, and made out the usual note, coupons and trust deed, dated May 8, 1893, which Willis P. Baker took away to be executed by his mother.   When he brought them back they bore what purported to be the signature of Mrs. Baker, and the trust deed was accompanied by the usual certificate of acknowledgment, dated May 18, 1893, and made by Fred G. Thearle, Jr., a notary public.   Thearle was a son-in-law of Mrs. Baker and lived in her house.   The note and coupons were made, for convenience, to the order of Edith L. Pease, a sister of appellees, but shortly after the consumnation of the loan were transferred by her to Henry Morse, the real lender.

For the proceeds of this second loan, less expenses, appellees drew two checks on appellant, the First National Bank of Chicago, both to the order of Charlotte A. Baker, one

dated May 19, 1893, for $1,000, and one dated May 27, 1893, for $2,424.55. Willis P. Baker had conducted all the negotiations for this loan, brought in the abstracts, etc., and was the only person appellees dealt with in that connection, and to him, as the purported agent of his mother, they delivered said checks. He, Willis P., at once deposited the checks to the credit of his own personal account in the Northern Trust Company, the checks at the time of such deposit bearing what purported to be the indorsement thereon of the signature of Charlotte A. Baker. The Northern Trust Company credited said Willis with the amount of the checks, and the checks were thereupon paid in the usual way, through the Chicago Clearing House, by appellant, to said Northern Trust Company, and charged by appellant against appellees.

It was admitted on the trial that appellees, prior to the suit, had on deposit with appellant funds more than sufficient to cover the aggregate amount of said checks, but that all of said funds, over and above the amount of the checks, had been properly paid out by appellant on checks of appellees about which there was no question.

When the first interest coupon came due in November, 1893, appellees endeavored to collect the same of Mrs. Baker, but she refused to pay, and appellees, on pushing inquiry into the matter, were advised by Edward Maher, Mrs. Baker's attorney, that she, Mrs. Baker, did not know of any such loan.

Appellees then demanded of appellant the money paid on the checks, on the theory that Mrs. Baker's signature had been forged, and being unable to collect, began the action below.

On the trial two depositions of Mrs. Baker were admitted in evidence, one taken in the suit itself, and one taken in a suit brought by Mr. Morse, the owner of the notes, to foreclose the trust deed. To the latter neither appellant nor the Northern Trust Company was a party.

In the first, she testified, in substance, that she was the owner of the property covered by the trust deed; that she

never had any business transactions with the appellees, or either of them; that the indorsements " Charlotte A. Baker" on the checks were not in her handwriting or made by her authority; that she did not know in whose handwriting they were, did not see them written, and never received a penny of the proceeds of the checks; that the indorsements were wholly without her consent or knowledge; and that she first heard of the loan transaction in November, 1893, and never saw the checks until her deposition was taken in the foreclosure case (March 9, 1894); also that she did not in the years 1892 and 1893, at any time, talk with her son in regard to making a loan upon the property in question, and did not in the year 1893, at any time, contemplate making such loan, and that the subject of making such loan was not considered by her at any time during that year; also, that if her son indorsed her name on the checks it was without authority from her, and that he had no right to use her name; also, that said Willis died in January, 1894, and that during the five years before her son's death she talked over everything in regard to such real estate transactions as she had during that period with her son, and that in those cases the deeds were drawn under his and her direction jointly, and that she consulted him regularly and habitually in regard to her business transactions.

In the second deposition, she testified that the signatures to the note, coupons and trust deed were not in her handwriting or by her authority, and that she never appeared and acknowledged the trust deed before Mr. Thearle or any one else, and that she never assented or consented to said signatures, and that she never authorized her son to borrow money on the property, and was not aware that he was doing so, and that she had never, prior to May 19, 1893, permitted or authorized her son to indorse her name on checks made payable to her order.

When the second deposition was offered in evidence appellant objected to the introduction of any other depositions, and further objected to the deposition offered on the specific grounds that it was not binding upon appellant, having

been taken in the other (the foreclosure) case, and that the certificate of the notary could not be overcome by the testimony of the party acknowledging the deed, whereupon the court received the deposition subject to the objections, and admitted it in evidence subject thereto, to which action of the court appellant excepted. The court certifies, however, that it did not read or consider the same.

At the end of the trial appellant submitted to the court and requested it to hold seven propositions of law. The court refused so to do, whereupon appellant excepted. The court found against appellant, and judgment was rendered against appellant, whereupon an appeal to this court was prayed and perfected.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for appellant.

BURTON & REICHMANN, attorneys for appellees.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Whether improper evidence was admitted upon the trial of this cause, without a jury, is now immaterial. The court upon undisputed evidence, properly admissible, found that the signatures upon the checks were forgeries—that is, neither made or authorized by the payee.

There is no pretense that Mrs. Baker claimed either of these checks, or the proceeds thereof, or was entitled to either.

Stripped of all verbiage, the position of appellant is that the checks belonged to Mrs. Baker, *nolens volens;* that some notary having certified to her acknowledgment of a deed purporting to secure a loan on account of which these checks were given, Mrs. Baker is thus shown to be entitled to the checks, and can bring suit therefor, notwithstanding she had nothing to do with any of and repudiated the entire transaction.

The authorities cited as to the effect of a certificate of acknowledgment of a deed are in relation to questions of

title, and not with reference to the possession or ownership of checks or their proceeds.

Where a check is drawn payable to the order of an actually existing person or corporation, if the order or indorsement of such payee is forged, payment by the bank is no acquittance. The depositor has directed payment to be made in a certain manner; a payment made otherwise than according to his directions is no discharge of the bank's obligation towards him. Morse on Banks and Banking, Par. 474; Daniel on Neg. Instruments, Par. 1618.

The judgment of the Circuit Court is affirmed.