**NATIONAL METROPOLITAN BANK v. REALTY APPRAISAL & TITLE CO.**

No. 5031.

Court of Appeals of District of Columbia.

Argued Feb. 9, 1931.

Decided March 2, 1931.

Hayden Johnson, Vernon E. West, and L. Harold Sothoron, all of Washington, D. C., for plaintiff in error.

George W. Offutt and Ross H. Snyder, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

A review of a judgment in an action brought against a bank by a depositor to recover because of the payment, upon a forged indorsement, of a check issued by the depositor and made payable to order.

The facts are not in dispute. In December, 1926, Clinton T. Flanagan, a negro, professing to represent Emelia Murray, applied to C. F. Waring, a broker, for a loan of $2,000, upon the security of a second deed of trust upon certain described real estate situate in the city of Washington, and owned by

Emelia Murray. Waring secured the loan from William K. Hill, one of his clients. The transaction was to be closed through the office of the Realty Appraisal & Title Company, hereinafter called the title company.

On December 14, 1926, Theodosia Stevenson, a negro woman, appeared at the office of the title company, pretending to be Emelia Murray, and, acting in concert with Flanagan, forged the name of Emelia Murray upon three papers, (1) an application addressed to C. F. Waring for a loan of $2,000, to be secured as aforesaid; (2) a deed of trust note, dated December 14, 1926, for $2,000, to be secured upon the described property; and (3) a deed of trust purporting to convey the property to certain trustees to secure the payment of the note. The deed of trust was acknowledged before Annie W. Ball, the secretary and treasurer of the title company, who was also a notary public, and who executed the customary certificate that "Emelia Murray * * * personally appeared before me in said District, the said Emelia Murray being personally well known to me as the person who executed said deed and acknowledged the same to be her act and deed." In fact the real Emelia Murray had no knowledge whatever of this transaction.

The title company, misled by the fraud, examined the title of Emelia Murray to the mortgaged property and reported favorably upon it, and the proceeds of the loan were disbursed through its hands. In making such disbursement, the title company on December 26, 1926, drew its check to the order of Emelia Murray in the sum of $728.13, and on January 5, 1927, drew its second check to the order of Emelia Murray in the sum of $192.47. Both checks were drawn on the National Metropolitan Bank, and are the two checks upon which the action below was based.

The checks were delivered by the title company to Flanagan to be delivered by him to Emelia Murray. The first check on the day of its date was fraudulently indorsed by Flanagan with the name "Emelia Murray," and also that of "Clinton T. Flanagan, Trustee," and deposited to his credit in his account with The Commercial National Bank of Washington, D. C. That bank indorsed the check, "Prior indorsements guaranteed. Dec. 17, 1926," and as thus indorsed it was received and paid by the drawee, the National Metropolitan Bank. The second check followed a similar course, except that it was deposited on the day of its date by Flanagan in his account with the Mt. Vernon Savings Bank of Washington, D. C., indorsed with the names "Eme-

lia Murray" and "Clinton T. Flanagan, Trustee," and indorsed by that bank, "Prior indorsements guaranteed," and transferred to the Commercial National Bank, by which it was indorsed, "Prior indorsements guaranteed," and collected from the National Metropolitan Bank. Both checks were charged by the latter bank to the account of the title company. Flanagan closed his account with the Commercial National Bank on January 6, 1927, and with the Mt. Vernon Savings Bank on September 12, 1927, and later absconded.

Theodosia Stevenson, who committed the first forgeries, was an ignorant laboring woman who was employed by the day to clean Flanagan's office and at times his house. She knew of course that her name was not Emelia Murray when she signed that name to the papers, but relied upon Flanagan's assurance that it would not bring her into any trouble, and she had confidence that Flanagan would not tell her to do anything "that was wrong." She never received the checks in question from Flanagan, nor did she indorse either of them or authorize Flanagan to indorse them for her, nor did she appear at any of the banks, nor receive any of the proceeds of the checks. In these particulars this case differs from Central Nat. Bank v. National Metropolitan Bank, 31 App. D. C. 391, 17 L. R. A. (N. S.) 520, and many of the cases cited therein.

The municipal court held upon the facts that the title company should recover from the bank the sums thus paid from its deposit account for the forged checks. The court accordingly directed a verdict and entered judgment against the bank, whereupon this review was granted.

In our opinion this ruling was correct. The facts disclose that Flanagan, in the absence of both the genuine and spurious Emelia Murray, obtained the possession of the checks in question, which were made payable to the order of Emelia Murray, and secured payment thereof from the bank by means of forged indorsements of the name "Emelia Murray" which he wrote upon them. The indorsements were forgeries whichever "Emelia Murray" they may be supposed to stand for.

It is an established rule that, "where a check is drawn payable to the order of any actually existing person or corporation, if the order or indorsement of such payee is forged, payment by the bank is no acquittance. In such case the depositor has directed payment to be made in a certain manner; a payment

984

made otherwise than according to his direction is no discharge of the bank's obligations toward him. Neither has the holder, under a forged indorsement, any title to the paper, or any right to receive payment of it." Morse on Banks and Banking, vol. 2, § 474. "Where a check is drawn payable to the order of an actually existing person or corporation, if the order·or indorsement of such payee is forged, payment by the bank is no acquittance. Where a depositor directs a payment to be made in a certain manner, a payment made otherwise than according to his directions is no discharge of the bank's obligation toward him." First Nat. Bank v. Pease et al., 68 Ill. App. 562.

■ There is, however, a recognized exception to this general rule, which has been variously expressed by the authorities. In Hardy & Bros. v. Chesapeake Bank, 51 Md. 585, 586, 34 Am. Rep. 325, the exception is set out by Justice Alvey in these words: "But while these are the strict and necessary rules as against banks and bankers, their operation may be varied by the acts and conduct of the parties for whose benefit and protection they are intended to be enforced. If, for instance, a customer of a bank, having a deposit account, and who is in the habit of drawing checks upon that account, should, by words or acts, cause the bank, the latter acting upon such reasonable grounds as prudent business men generally act, to make payment on a forged check, such customer would not be allowed, as against the bank, to set up the forgery that he, by his conduct, had induced the bank to act on as a genuine check." In 3 Ruling Case Law, p. 542, § 171, the same principle is set out as follows: "The rule is well established that ordinarily a banker, on whom a check is drawn, must ascertain at his peril the identity of the person named in it as payee. It is only when he is misled by some negligence or other fault of the drawer, that he can set up his own mistake in this particular against the drawer. The question of negligence cannot arise unless the depositor has, in drawing his check left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the check may come. * * * If a person assuming to be the agent of another receives a check payable to his alleged principal and the bank pays the check to the agent who represents himself to the bank as the principal or forges the indorsement of the principal, the payment is unauthorized and cannot be charged to the drawer. * * *"

The exception is founded upon or allied to the principle that, as "between two innocent persons, the one whose act was the cause of the loss should bear the consequences." Central Nat. Bank v. National Metropolitan Bank, supra.

It is contended on behalf of the bank that the title company was negligent in permitting Flanagan and his dupe to impose upon the company as shown by the facts, and that this negligence resulted in the issuing of the checks in question, and placed it in the power of Flanagan to obtain payment of them by means of the forged indorsements. It is claimed accordingly that the company is not entitled to recover because of their payment.

This claim is not tenable. It is doubtless true that the transactions out of which the checks issued were handled in a negligent manner by the officers of the title company. But such negligence bore no relation to the conduct of the bank when it paid the forged checks. When the checks were presented to the bank by Flanagan, so far as the bank was concerned, they were not affected by the previous history of the transaction, but were simply checks drawn by the title company to the order of Emelia Murray and indorsed with her name and that of Flanagan. The bank apparently accepted and paid them upon the faith which it had in its depositor Flanagan, and made no inquiry concerning the genuineness of the prior indorsement thereon of Emelia Murray's name. In this the paying bank was itself negligent, and it was this negligence which led to the present loss and imposes liability for it upon the bank.

In Atlanta National Bank v. Burke, 81 Ga. 597, 7 S. E. 738, 2 L. R. A. 96, it is said: "That Burke was himself imposed upon by the forgery by Knapp of the name of Knapp's wife as maker and grantor of a note and deed, would not preclude Burke from complaining of the payment by a bank of a check drawn upon it by Burke in favor of Mrs. Knapp to Knapp, upon a forged indorsement by Knapp of her name upon said check. Nor is it true that, because Knapp's own indorsement was genuine and followed the forged indorsement of his wife's name and he was the last indorser, the bank was not bound to look to the genuineness of her indorsement." See Murphy v. Metropolitan Nat. Bank, 191 Mass. 159, 77 N. E. 693, 114 Am. St. Rep. 595.

The judgment of the municipal court is affirmed, with costs.