## UNITED STATES v. WASHINGTON LOAN & TRUST CO. et al.

### Civil Actions Nos. 1218–1220.

District Court of the United States for the District of Columbia.

March 16, 1942.

Edward M. Curran, U. S. Atty., and Bernard J. Long, Asst. U. S. Atty., both of Washington, D.C., for plaintiff.

George P. Hoover, of Washington, D. C., for defendant Washington Trust Co.

Walter B. Guy and Frederic B. Warder, both of Washington, D. C., for defendant Columbia National Bank.

Hogan & Hartson, of Washington, D. C., for defendant Riggs Nat. Bank.

ADKINS, Justice.

I am very much impressed with the manner in which counsel have prepared the cases and presented the arguments on the motion. It is one of those cases where the more preparation on the part of counsel, the more work the court has had to do in examining this multitude of decisions. The real difficulty seems to be that there is considerable conflict of authority on more than one at least of the propositions of law involved.

There are many cases where a decision either way may fail to impress the court as being exact justice. For instance, in many cases today the doctrine of contributory negligence seems unfair; this is one of the cases where I think the authorities and decisions, either way, are not in accordance with precise justice. Probably that is the reason for the change which has taken place in the last 40 or 50 years in the growth of the law on this subject; so with that, I will give you the conclusions I have reached.

In the first place, the checks involved were not payable to bearer; I understood that proposition is not disputed.

In the second place, in my opinion, the statute of limitations is not applicable. Section 1268 of the code, Code 1940, § 12—204, provides that the statute of limitations shall not apply to any case in which the United States is the real and not merely the nominal plaintiff. I think this also disposes of the question of laches, speaking now of the equitable defense of laches as comparable to the statute of limitation.

Of course, if, after discovery of the forgery there was unreasonable delay in giving notice thereof, and the banks were prejudiced thereby, such delay would be a defense to the extent of the loss

shown. That this is settled is plain from Ladd and Tilton Bank v. United States, 9 Cir., 30 F.2d 334. I understand no contention is made here that, because of delay in giving notice after discovery, to the banks, they suffered loss within the meaning of the rule just mentioned. I understand their contention to be that they suffered loss because the fraud continued, and they cashed additional checks.

The remaining defenses, which were very strongly relied on, were negligence in the issuance of the checks and equitable estoppel. The facts claimed to support these defenses and the defense of laches are, to a large extent, the same; that is, those defenses are said to be established by pretty much the same evidence.

Stitely began his frauds as far back as 1932; the imaginary C.C.C. camp was started in 1933. The fraud was discovered in April 1937, which discovery made it impossible for Stitely to secure any more checks, and so put an end to his negotiation of such checks. As I understand it, the defendants contend that the government was negligent in permitting even the first check to be issued and that this negligence continued and increased throughout the duration of the fraud; that the fraud was discovered by accident and not by any care on the part of Government officials.

It is contended that if the Government had exercised due care in the first place, the first fraud could not have occurred; that thereafter, there was no examination and inspection of the checks; no examination and reconciliation of the books, records and accounts, and no inspection of camps; that Stitely knew of the precise condition of affairs except perhaps, as to the failure to make inspections of camps and knew of the failure to take proper safeguards in the handling of the checks generally; that if Stitely had been content to deal only with the imaginary camp, he probably would never have been caught.

But, because he grew bolder and branched out into other accounts, the discovery came sooner than it might otherwise, if at all.

Well, if the C.C.C. Camps were ever abandoned, there might have been a check or an inventory which would have developed this situation. Similar cases have been occurring over a period of years, and my experience indicates that sooner or later they are discovered although sometimes the dishonest employee is dead when the

discovery takes place. It cannot be denied that if the Government had earlier discovered the frauds, the banks would not have cashed subsequent checks.

The question is what, if any, duty was owing from the Government to the defendant banks? Whether there was any duty owing to the banks or the banks had made an actual or implied warranty of the checks, and the genuineness of their endorsement, and whether, if the Government was negligent, that negligence was the proximate cause of the payment of the checks by the bank.

Now, the answer to these questions will depend, to some extent, on the nature of the obligation assumed by the banks when they cashed the checks, and the nature of their implied or expressed warranties to the Government.

■ It seems to be settled that the effect of the decisions of the Supreme Court in United States v. National Exchange Bank, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184, and in Leather Manufacturers' National Bank v. Merchants' National Bank, 128 U.S. 26, 9 S.Ct. 3, 32 L.Ed. 342, is to hold that there was an implied warranty on the part of the banks arising out of their endorsement of the checks, that is, an implied warranty of the genuineness of the prior endorsements, and the right to recover is based on the equitable doctrine of money had and received. Ladd and Tilton Bank v. United States, 9 Cir., 30 F.2d 334.

There was some suggestion and argument that United States v. Guaranty Trust Company, 293 U.S. 340, 55 S.Ct. 221, 79 L. Ed. 415, 95 A.L.R. 651, modified this rule. There, the Supreme Court, in holding that the title to that check there involved was passed by the forged endorsement, taking place in Jugoslavia, mentioned specifically the guarantees of the Trust Company, namely that it had legal title and the right to enforce payment of the check. But the federal courts have not considered that the Guaranty Trust decision qualified the rule that an endorsement impliedly warranted the genuineness of prior signatures. See City Bank v. Hamilton Nat. Bank, 71 App.D.C. 225, 227, 108 F.2d 588. See, also, Sec. 24, Title 22 of the Code of 1929.

■ Now, to take up the question of negligence, it seems to me the real question is whether the alleged negligence was the proximate cause or the remote cause of the payment by the banks on the forged

endorsements. There is a decided conflict of authority on this question, but it seems to me that the weight of authority holds that negligence which permits the issuance of a check which is not payable to bearer is a remote cause and not the proximate cause. This rule, as I understand it, has been adopted by the United States Court of Appeals for this District in Nat. Met. Bank v. Realty Appraisal and Title Company, 60 App.D.C. 86, 88, 47 F.2d 982, and in the other Federal Courts, and is binding on this court.

I have examined many of the cases cited for the purpose of ascertaining what they mean by proximate and remote cause in such cases as the present, that is, what negligence will protect the person who cashes the check. In National Bank v. Nolting, 94 Va. 263, 265, 26 S.E. 826, the court said the negligence must be immediately connected with the forgery. In that case, somebody had gotten a check from the bank for $10.00 drawn on some other bank and it was raised, as I recall, by a professional, that was his business, and it was contended that it was negligence, but the court held otherwise.

In Crawford v. West Side Bank, 100 N. Y. 50, 55, 2 N.E. 881, 882, 53 Am.Rep. 152, the court said "the question of negligence cannot arise unless [one] has, in drawing his check, left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the check may come," citing Young v. Grote, 4 Bing. 253.

That is one of the early cases. There a wife had received a number of blank checks signed by her husband; she filled out one of the checks in a very careless manner, beginning the word "fifty" in the middle of the line and with a small letter, then giving it to her husband's clerk to have it cashed; and he wrote "three hundred" in front of the fifty and cashed the check as altered. It was held that that was negligence on the part of the drawer of the check which did inhere in the making of the check itself.

In Jordan Marsh Company v. National Shawmut Bank, 201 Mass. 397, 407, 87 N. E. 740, 742, 22 L.R.A.,N.S., 250, which is a leading case on this subject, the court said: "It seems plain that only negligence which is a direct and proximate cause of the payment can be effectual in making such a defense."

In that case there were a great many checks over a period of years. The early checks were made payable to one Sefton who was a sister of the dishonest employee and she actually endorsed a few of the first checks; thereafter her endorsement was forged. The court made this distinction; that as to the checks actually endorsed by Sefton, the bank would not be liable, but as to the other checks where the signatures of the payees had been forged, the negligence was too remote to be effectual.

In Bartlett v. First National Bank, 247 Ill. 490, 93 N.E. 337, plaintiff learned of the forgeries, and permitted them for awhile, and it was only after the forgeries were continued and plaintiff did not get the benefit of them, that the effort was made to throw the losses on the bank. Plaintiff's agent accounted for the money received from the early forgeries; plaintiff did caution the employee about his conduct, but did not notify the bank; the agent continued his forgeries and appropriated the money. The court held that, having learned of his conduct and profited thereby for a while, the employer would not be permitted to shift the loss to the bank when the employee thereafter kept the money which he obtained by the forgeries.

Now, it seems to me that the rule I have just been discussing has been adopted by the United States Court of Appeals for this District in National Metropolitan Bank v. Realty Appraisal and Title Company in 60 App.D.C. 86, 88, 47 F.2d 982.

There the negligence in issuing the checks was held to be unrelated to the conduct of the bank when it paid the forged checks. In addition to the Jordan Marsh case, supra, there are interesting discussions in United States Storage Co. v. Central Bank, 343 Ill. 503, 175 N.E. 825, 74 A.L.R. 811, and Armstrong v. Pomeroy National Bank, 46 Ohio St. 512, 523, 22 N.E. 866, 6 L.R.A. 625, 15 Am.St.Rep. 655.

In the latter case, the court said if the bank did not know the person or his signature, if it acted at all, it must have been upon the confidence the bank had in the knowledge of some other person.

In Welsh v. German American Bank, 73 N.Y. 424, 425, 29 Am.Rep. 175, the court said that in delivering the checks to the plaintiff's clerk for the purpose of passing them on to the payee, a forgery of the payee's endorsement made the plaintiff no more responsible than if the plaintiff had

entrusted the checks to an expressman for a delivery.

In the case of Shepard & Morse Lumber Company v. Eldridge, 171 Mass. 516, 51 N.E. 9, 41 L.R.A. 617, 68 Am.St.Rep. 446, the court said that the holder of a check is not deprived of his rights against a drawer by merely negligently delivering that check to a clerk who due care would have told him was dishonest, and thus giving the clerk an opportunity to commit the crime.

In these two cases it was held that the negligence in issuing the checks was not a defense: Los Angeles Investment Company v. Home Savings Bank, 180 Cal. 601, 182 P. 293, 5 A.L.R. 1193; American Sash and Door Company v. Commerce Trust Company, 332 Mo. 98, 56 S.W.2d 1034. Also it is held that it is not negligence to fail to discover the fraud at an earlier date; United States v. National Bank of Commerce, 9 Cir., 205 F. 433; Insurance Company of North America v. Fourth National Bank, D.C., 12 F.2d 100.

Now there are a number of cases cited by counsel for the defendants which support their views. I think some of these can be distinguished but some of them cannot. I will discuss them hereafter.

Also it is perfectly true that there are a number of cases decided on the proposition that it is negligence to fail to discover the fraud.

However, I think this court is bound by the other views, as announced by the Court of Appeals and the cases I mentioned.

Now, as to the question of equitable estoppel, I think I have read all the cases which were cited on this subject in the brief of defendants and after careful consideration of them, I am of the opinion that this is not a case in which the rule applies.

The checks here involved were not payable to Stitely, they were delivered to him for the purpose of delivery to the payees; they could not be used by him in their condition, but forgery of the names of the payees was necessary. Now, many of the cited cases, the cases cited by the defendants, I think can be distinguished on satisfactory grounds, though it is true that in many cases, the decision was in part based on equitable estoppel, and thus supports the contention of defendants.

It seems to me that the language used in National Safe Deposit, Savings and Trust Company v. Hibbs, 229 U.S. 391, 396, 33 S. Ct. 818, 820, 57 L.Ed. 1241, shows the extent of the rule. All of you gentlemen are familiar with the facts in that case. There the court said: "Here one of two innocent persons must suffer and the question at last is, Where shall the loss fall? It is undeniable that the broker obtained the stock certificates, containing all the indicia of ownership and possible of ready transfer, from one who had possession with the bank's consent, and who brought the certificates to him, apparently clothed with the full ownership thereof by all the tests usually applied by businessmen to gain knowledge upon the subject before making a purchase of such property. On the other hand, the bank, for a legitimate purpose, with confidence in one of its own employees, intrusted the certificates to him, with every evidence of title and transfer ability upon them. The bank's trusted agent, in gross breach of his duty, whether with technical criminality or not is unimportant, took such certificates, thus authenticated with evidence of title, to one who, in the ordinary course of business, sold them to parties who paid full value for them. In such case we think the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible. Applying this principle, we think the Court of Appeals was right in affirming the judgment of the Supreme Court."

Now, it seems to me the distinction is that there, when the dishonest employee got the stock certificates, it was unnecessary for him to do anything else—he apparently had the title and he did not forge anything.

In this case there was this other act and it seems to me that the line has been drawn there.

■ In the present case, Stitely got possession of the checks not payable to bearer. However, forgery was necessary to permit him to avail himself of the proceeds; first, the actual forgery was necessary and then an implied false representation to each bank which cashed the check was necessary.

I think the facts of the present case do not bring it within this rule as announced by the Supreme Court.

Now, in many of these cases relied on, and which are applicable, to some extent to the defense of negligence, there were other grounds on which the decision could be

predicated, but it is true that in many of these cases, the court relied upon this defense alone, or a combination of the two grounds. I think in some it is put squarely on this one ground of equitable estoppel.

In many of those cases the checks were payable to bearer; in some cases the imposter rule was applicable; in some cases the wrongdoers were agents with authority to draw instruments which would bind their principals and they exceeded that authority. In others, the relation of bank and depositor existed, and the depositor failed to discover the forgeries within a reasonable time. In other cases, while the relation of depositor and bank may not have existed formally, nevertheless, the bank had some very definite business relation with plaintiff, and was being used by plaintiff in the performance of its business.

The case cited by defendants which is more like this than any of the others is United States v. Commercial National Bank, Law No. 77050 in the Supreme Court of the District of Columbia, decided by Justice Bailey. It is contended by plaintiff and I think with some force, that as to all but one check, that decision might have been grounded upon the impostor theory. However, Justice Bailey put his decision squarely on the ground of equitable estoppel and did not mention the other ground.

Counsel for defendants have called attention to the respect to which a decision by Justice Bailey is entitled. I realize that just as strongly as they do, perhaps better than they. I am acquainted with his great learning, his ability, sound judgment, and his infinite care in making a decision, and it is with great hesitation that I have found myself unable to agree with his view in that case.

■ In this matter, involving the question of the recovery of money received under an honest mistake of fact, there are a number of cases which hold that until there has been a request for repayment, interest is not payable, and I have reached the conclusion that interest should not be allowed before that date.

Now, as I recall the decisions of the Court of Appeals on the question of a motion of this kind, you have the right, if you so desire, to say anything or add anything to your statement heretofore made.

Mr. Hoover: "I do not have anything factual to add."