Ezra Sprague et al., complainants-respondents,

*v.*

West Hudson County Trust Company et al., defendants-appellants.

[Submitted March 21st, 1921.   Decided June 20th, 1921.]

A party who has endorsed checks to which a prior endorsement was forged, has no equity to require that the bank on which such checks are drawn and which has paid them shall refuse to reimburse its depositor after discovery of the forgery, until questions of the depositor's negligence in examination of returned vouchers and statements of account have been determined in litigation between the depositor and the bank.

On appeal from an order advised by Vice-Chancellor Fielder denying motion to dismiss bill of complaint.

*Mr. Edwin F. Smith* and *Mr. Raymond Dawson*, for the appellants.

*Mr. Archie H. Ormond*, for the respondents.

The opinion of the court was delivered by

PARKER, J.

The motion below was to dismiss the bill; and ten grounds were stated, the first of which that it does not make out a case entitling complainants to equitable relief is sufficient for present purposes. Such a motion, under the chancery rules of 1917, like a motion to strike out under the rules of 1910, appears to be the equivalent of a general demurrer. By rule 51, attached to the Chancery act of 1915 (*P. L. 1915 pp. 184, 195*). appearing as rule 67 in the rules of 1917, demurrers are abolished, and any pleading "may be objected to, on motion, on the ground that it discloses no cause of action," &c. *Schulz* v. *Ziegler, 80 N. J. Eq. 199; Weidmann Silk Dyeing Co.* v. *Water Co., 88 N. J. Eq. 397.* Whether the motion is to dismiss a bill as insufficient on its face, or to strike it out, seems now immaterial, as each is an "objection."

The question, then, is whether the bill shows any ground of equitable relief. It prays that certain banks, in which the corporation of Swift & Company is a depositor, may be restrained from repaying to Swift & Company the amount of certain checks charged up to the Swift account and paid by such banks on forged endorsement, "until a court of competent jurisdiction has determined that said defendant banks are legally liable thereon." Several banks are involved and a number of different checks; but the joinder of these different matters is evidently within the rule of chancery relating to causes of action having a common question of law or fact, &c. *P. L. 1915 p. 190 rule 24.*

The case made by the bill is this: Complainants are a mercantile firm doing business in Newark. One of their customers

was a man named Keoskie. In March, 1920, Keoskie called at complainants' place of business and introduced a man named Bissell, who he said wanted a check for $1,740.25 cashed, but that he, Keoskie, did not have time to take Bissell to his bank to cash it, and would complainants please cash the check at their bank and let Bissell have the money; that Bissell was all right, and the check was all right, &c. The check purported to be signed, and actually was signed by defendants Swift & Company, or some one authorized to sign for them, was made to a party now called the R. S. Company, as payee, and purported to be endorsed by the R. S. Company. It turned out later that this endorsement was forged. One of the complainants, accepting Keoskie's statement, went to the complainants' bank with Bissell, endorsed complainants' name on the check, drew the money, and handed it to Bissell, who then left. Neither Bissell nor Keoskie was requested by plaintiffs to endorse the check.

This performance was repeated six times during the months of March, April and June, 1920, with other checks of Swift & Company, three of which were made out to another payee, but the other circumstances were the same. The amounts varied, but in all the complainants innocently accepted checks of Swift & Company aggregating about $13,000, all of which bore false endorsements, and in exchange for them gave Bissell this money which complainants obtained by endorsing the checks and cashing them at their own bank, without any indemnity from any one, but merely the oral statement of Keoskie that Bissell was "all right," as noted above.

The explanation of the fraud was that Bissell, a former employe of Swift, in combination with one Martin, then in their employ, got possession of Swift checks to parties to whom Swift owed money, forged the endorsements, and negotiated those in question through Keoskie and complainants. Ultimately, the forgeries were discovered, as they had to be, upon checking up accounts with the banks; and upon such discovery, Swift & Company, in the usual course, made demand on the banks for reimbursement, and the matter was in process of adjustment when the complainants intervened with their bill of complaint,

seeing full well that if the banks repaid Swift, those banks would call for reimbursement from the Sprague bank, and that bank in its turn from complainants. The claim of the bill is that Swift & Company have allowed themselves to be defrauded in this way for many months, running back to November, 1918, and that if Swift & Company had been ordinarily diligent in looking after their banks and their accounts the system would have been discovered before complainants were ever inducted into it, and that the Swift banks are entitled to, and should, defend against the forgeries on account of this negligence, as in *Pratt* v. *Union National Bank,* 79 *N. J. Law 117,* and *Pannonia Building and Loan Association* v. *West Side Trust Co.,* 93 *N. J. Law 377,* and if successful in that defence, complainants will not have to pay. The further point is made in the bill that some of these checks were duplicates and should have been recognized as such at the time or promptly discovered.

We are quite unable to see any equity in favor of complainants. It is true that Swift & Company owed it to their bank, after return of their paid checks, to exercise reasonable diligence and care to examine the vouchers and the account as stated by the bank, and inform it of any errors thus discoverable. *Harter* v. *Mechanics National Bank,* 63 *N. J. Law 578, 580.* But we have never heard that this duty extended to others than the bank. Persons into whose hands a check may come before payment take the risk of forged signatures and forged endorsements, preceding their own. These complainants did not even receive the checks in the ordinary course of business. On the contrary, they went gratuitously out of their way to enable a stranger to get money, by themselves guaranteeing to their own bank by their own endorsement, that the check was good and that the prior endorsements were genuine. There was no privity between them and Swift & Company; all that the latter were interested in was that their bank should not pay out money on their account improperly; and if it did so, the question whether it should respond to Swift & Company is one in which complainants would seem to have no legal or equitable interest. We have seen that a bank which has paid on a forged endorsement may in some case de-

fend against its depositor on the theory of negligence; but we have never heard of this rule being invoked in favor of any one but the depository bank. Its contract with the depositor is to pay its debt to him when and as demanded by checks upon it. As to parties claiming to be payees of those checks, the bank is under no obligation whatever in the absence of certification. *National Bank* v. *Berrall, 70 N. J. Law 757.* When the bank has paid on a forged endorsement, it must ordinarily make good to its depositor, and then stands as to all endorsements below that of the forger as a holder in due course. In the present case the writers of the endorsement immediately below the forged one are seeking to intrude into the relation between the bank and its depositor by requiring the bank, for their benefit, to defend against the depositor's claim. This defence, in our opinion, is for the bank alone, and parties claiming under the payee have no right to require the bank to set it up.

The claim of estoppel set up in the brief rests on the notion that Swift & Company owed the public, including complainants, some duty of care in examining their own accounts and returned vouchers. We know of no such rule, especially in a case where, with absolutely no interest in the matter, the complainants gratuitously put their name on the back of these checks to let a stranger receive the money.

The order will be reversed and the cause remanded with directions to dismiss the bill.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER—13.