**DISTRICT NAT. BANK OF WASHINGTON, D. C., v. WASHINGTON LOAN & TRUST CO.**

No. 5780.

Court of Appeals of the District of Columbia.

Argued May 8, 1933.

Decided May 29, 1933.

Roger J. Whiteford and P. H. Marshall, both of Washington, D. C., for appellant.

Arthur Peter and George P. Hoover, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment upon a verdict entered by direction of the trial court upon motions made by both parties for a directed verdict.

The evidence in the case tends to prove that in September, 1926, John J. Madden and Patrick J. Wholihan were brothers-in-law residing in the city of Washington. Wholihan was a widower and made his home with Madden, and was the owner of certain real estate situate within the city. In that month Madden, fraudulently representing himself to be Wholihan, applied under that name to the Equitable Co-operative Building Association of Washington for a loan of $5,000, to be secured by a deed of trust upon the property owned by Wholihan. Madden, professing to be Wholihan, stated that he was a widower, and gave the post office address at which both Wholihan and Madden received mail. The officers of the association were not acquainted with either Madden or Wholihan, but they "verified that Mr. Wholihan was at the same address given by Mr. Madden, and they tallied exactly." Thereupon a loan of $3,500 was made, secured by a bond and deed of trust upon Wholihan's property, both purporting to be signed by Wholihan, whereas in fact Wholihan's name was signed upon them by Madden. Wholihan knew nothing of the transaction and had not in any manner authorized it.

In the settlement of the loan, the association mailed to Wholihan at the address given by Madden, which had been verified by the settlement clerk, a statement of the loan adjustment and a check of the association drawn upon the Washington Loan & Trust Company, payable to the order of Wholihan for the sum of $3,447.50, which was the net amount of the loan. Upon delivery of this letter at the address of both parties Madden furtively obtained possession of it and thus secured possession of the check. On the next day he went to the association's office and there indorsed the name of Wholihan upon the check, and asked the settlement clerk to cash it. The clerk refused to cash the check, and told Madden that he should put the check through his own bank in the regular way.

832

Madden then went to the District National Bank, where he had been a depositor for many years, and where he was well known under his proper name. At this time Madden was indebted to the bank in the sum of more than $12,000, which was then in arrears. Madden presented the check to the assistant cashier and told him he wanted to get it cashed. The assistant cashier looked at the check and said no doubt it was all right, but that Madden should put the check through in the regular course. Thereupon Madden indorsed the check with his own name underneath the fraudulent indorsement of Wholihan's name and deposited it to his own credit. At the same time Madden told the assistant cashier that the money was not his, but belonged to his brother-in-law, Wholihan. The bank then placed the following indorsement upon the check: "Pay to the order of any bank or trust company, prior indorsements guaranteed, September 25, 1926, District National Bank, Washington, D. C." The check was presented in due course to the Washington Loan & Trust Company, the drawee, and was cashed.

On the same day Madden was served with a summons in a suit instituted against him by the District National Bank, based upon his overdue notes held by the bank. Madden thereupon went to the bank and saw the cashier, to whom he stated that he was going to pay $700 on his note, saying, "The money is here." On the next day, Madden received a letter from the cashier notifying him that on that morning the District National Bank had charged his account with $3,400 and had credited a like amount upon his overdue obligations. Upon receipt of the letter, Madden went to the bank and said to the cashier, "That is not my money"; saying also that he had so stated when he made the deposit. A discussion followed, and Madden told them that "The whole thing belonged to Wholihan." The bank, however, retained the proceeds of the check, crediting the same upon Madden's overdue obligations. The next day, however, it loaned Madden the sum of $900 upon a promissory note signed jointly by himself and his wife.

Madden thereafter kept up payments on the fraudulent trust at the office of the building association for about three years and finally in February, 1929, he became so much in arrears that the association sent a notice to Wholihan that his trust was in default. The fraud was thereupon discovered. As soon as the building association was apprised of the facts, it communicated the same to the District National Bank, and demanded a re-turn of the money paid upon the check. This was refused by the bank.

The present action was then brought in the lower court by the trust company to recover the amount of the check from the District National Bank. The bank alleged in defense that the building association had entered into an agreement with the person known to them as Patrick J. Wholihan to lend him the sum of $3,500; that it had delivered to such person the check described in the declaration, whereby it directed the drawee to pay the amount thereof to the person to whom the association had agreed to make the loan, intending that he, the person known to it by the name of Patrick J. Wholihan, should be authorized to indorse the check in that name and receive the proceeds thereof from the drawee; that the check was thereafter indorsed in the name of Patrick J. Wholihan by the same person with whom the building association had negotiated, and to whom it had agreed to lend the amount thereof; that the check was subsequently indorsed by one John J. Madden, who deposited the same for credit, and after being so indorsed the bank had collected the check from the drawee through the clearing house of the city of Washington, and placed the amount thereof to the credit of Madden subject to his check. The bank accordingly denied that the check was not in fact indorsed by Patrick J. Wholihan, the payee named therein, and denied that the indorsement of the check in the name of Patrick J. Wholihan was not a genuine signature. The bank also alleged that after the fraud was discovered the building association returned the check to the trust company, and the amount thereof was credited to the building association under an agreement that the trust company should bring suit against the District National Bank to recover the amount, and that if the suit should result adversely to it, the full amount should be refunded by the building association to the trust company. The bank alleged that the trust company therefore was not the real party in interest, and was not entitled to bring the suit as such.

At the trial it was conceded that before the fraud was detected Madden had paid installments to the building association amounting to approximately $595 on account of the principal and interest of the mortgage loan. It was stipulated by counsel for plaintiff in the court below that in event there should be a judgment in its favor it would allow the District National Bank a credit for the amount so paid.

The case was tried to the jury, and at the close of the evidence each party moved for a directed verdict in its behalf. The court sustained the motion of the trust company. Judgment accordingly was rendered in its favor, and this appeal was taken.

It is an established rule that in general where a check is drawn payable to the order of any actually existing person, if the indorsement of such payee is forged, payment by the bank upon the forged indorsement is no acquittance. And a holder under a forged indorsement has no title to the paper or any right to receive payment of it. Morse on Banks and Banking, vol. 2, § 474.

Section 1327, D. C. Code 1924 (D. C. Code 1929, T. 22, § 24), reads as follows: "Where a signature is forged or made without the authority of the person whose signature it purports to be it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

It is plain that when Madden delivered the check in question to the District National Bank, indorsed with the name of Wholihan, he induced the officers of the bank to believe that the indorsement had been made by the genuine Patrick J. Wholihan, and not by Madden acting under the name of Wholihan. This would be the natural and legal interpretation of such a transaction even if no explanation were made by Madden to the bank at the time. But Madden made an explanation. He told the bank that the money was not his but belonged to Wholihan, thereby emphasizing the representation that another person than himself, namely, Wholihan, was the true payee of the check, and had indorsed his name upon it. Under these circumstances Madden's indorsement of the check in his own name following the forged name of Wholihan was wholly inoperative, and conferred no rights upon the indorsee bank. National Metropolitan Bank v. Realty Appraisal & Title Co., 60 App. D. C. 86, 47 F.(2d) 982.

It is claimed by the District National Bank that the effect of this rule is avoided in the present instance by the fact that the building association gave the check to Madden under the assumed name of Wholihan, intending that Madden in person should receive payment of the check, and that inasmuch as Madden actually received the money it must follow that neither the building association or the drawee of the check can complain.

We cannot agree with this contention. The building association intended the check to be paid to Wholihan, the owner of the mortgaged property. The association undertook to exercise proper care in making the payment to him. The check for the loan was sent by mail to Wholihan at his proper address, and would have been received by him and the imposture discovered except for the fact that Madden abstracted the check from the letter and thereby prevented Wholihan from receiving it. The check therefore was never delivered either to Madden or Wholihan, but in effect was stolen by Madden from the mails. Moreover, when Madden appeared at the office of the building association with the check and requested payment of it in cash, his request was refused, and he was required to go to his own bank, where he would be known, to make the collection in ordinary course. This shows that the check was delivered to Madden by the association with the intent and in the faith that a proper identification would be required of him before payment should be made to him. Such an inquiry would have resulted in the detection of the imposture. This, however, was prevented by the negligence of the District National Bank, which accepted the check as a credit upon Madden's overdue paper without making any effort to secure an identification of Wholihan's indorsement upon it.

The miscarriage in the present case therefore resulted from the neglect of the District National Bank rather than neglect of the building association. When Madden appeared at the bank and requested it to cash the check, the circumstances attending the origin of the check were wholly unknown to the bank. The only facts then appearing to it were that the check had been issued to Wholihan and indorsed by him to Madden, and that Madden was indorsing the check to the bank. The bank required no identification of the signature of Wholihan, but relied upon its acquaintance with Madden and its confidence in him. Moreover, it was to the advantage of the bank to secure such a deposit from Madden in view of his overdue obligations. The bank therefore guaranteed to the drawee, the trust company, that the indorsements were genuine, and thereby relieved it as well as the building association from the necessity of requiring any proof of their genuineness. The bank cannot complain if these parties relied upon its written guaranty. Moreover, under the circumstances the bank

was not an innocent holder for value without notice of the infirmities of the paper.

Under such circumstances it was the right of the drawer of the check, after receiving it from the drawee, and later discovering the fraud, to return the check to the drawee and claim credit for the amount. The drawee could not defend against such a claim upon the ground of the imposture which had been practiced upon the association by Madden. It had not received the check upon the faith of Wholihan's signature nor Madden's indorsement, but upon the guaranty stamped upon the check by the District National Bank, vouching for the genuineness of both signatures. It is therefore entitled to look to the bank for a return of the proceeds of the check.

The judgment of the lower court is therefore affirmed, with costs.