**NATIONAL METROPOLITAN BANK v. UNITED STATES.**

No. 8562.

United States Court of Appeals District of Columbia.

Argued March 16, 1944.

Decided May 1, 1944.

Mr. George C. Gertman, of Washington, D. C., for appellant.

Mr. Robert Kaplan, member of the Bar of the Supreme Court of Massachusetts, of Washington, D. C., pro hac vice, by special leave of court, with whom Messrs. Francis M. Shea, Assistant Attorney General, and Edward M. Curran, United States Attorney, Charles B. Murray, Assistant United States Attorney, and Leavenworth Colby, Attorney, Department of Justice, all of Washington, D. C., were on the brief, for appellee. Mr. Daniel B. Maher, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

GRONER, C. J.

National Metropolitan Bank appeals from a judgment of the District Court in favor of the United States in the sum of $18,060.83. Judgment was entered summarily by the District Court on the authority of Washington Loan & Trust Co. v. United States, 77 U.S. App.D.C. 284, 134 F.2d 59. The facts here are these:

James H. Foley was a civilian clerk in the Headquarters office of the Paymaster of the United States Marine Corps in Washington City. He was assigned to prepare officers' pay and mileage vouchers, to prepare checks in payment thereof, to present the checks for signature by the Paymaster or other

disbursing officers duly authorized to draw checks on the Treasury, and to deliver the signed checks to the named payees. From time to time during a period of twenty-eight months, beginning shortly before July 13, 1936, and ending November 14, 1938, Foley forged pay and travel mileage vouchers, together with the necessary supporting travel orders, and prepared one hundred and forty-four Treasury checks for payment of the amounts of the forged vouchers and orders. In the ordinary course he presented the checks to the Paymaster, who signed them. All were payable to one or another of sixteen actually existing Marine officers stationed in Washington. None of the payees was entitled to the proceeds of the checks or had any knowledge of the fraud. The signed checks were returned to Foley for distribution to the several officers, but Foley, instead of delivering the checks, forged the signatures of the payees, added his own name as second endorser, and cashed or deposited them with the Anacostia Bank of Anacostia, District of Columbia. That bank made no investigation of the genuineness of the payees' signatures, but took the checks in reliance on Foley, stamped them with the endorsement—"Pay to the order of any Bank, Banker or Trust Company. Prior endorsements guaranteed," and transmitted them to the National Metropolitan Bank (appellant) for collection. The latter bank likewise so endorsed the checks, presented them to the Treasury and received payment. It credited the collections to the Anacostia Bank in the regular course of business and paid over the proceeds prior to the discovery of the forgeries in November, 1938, and the Government's demand on appellant of repayment in December, 1938.

The Paymaster who signed the checks was unaware of the fraud, having relied upon Foley's reputation for honesty.

In the Washington Loan & Trust Co. case, relied upon by the lower court, the facts were these:

In 1933 Civilian Conservation Camps were, by order of the President, established throughout the United States. The Chief of Finance of the United States Army was made disbursing officer of the funds allocated to the camps. Stitely, the person responsible for the forgeries, was chief of the voucher unit of the accounts section of the Park Service, whose duty it was to prepare bi-monthly payroll vouchers in the names of employees of the Service, present them

to the disbursing officers and receive and distribute the checks payable to such employees. For four years Stitely made up fraudulent payroll vouchers for fictitious and nonexistent employees of an imaginary camp. These he took to the office of the Chief of Finance each pay day and received checks payable to the persons on the legitimate and also on the fraudulent payrolls. The checks on the fraudulent payrolls he retained, forged the signatures of the payees and cashed or deposited them to his account in one of the banks, defendants in the suit. After four years his frauds were discovered and suit was brought by the United States to recover the amounts paid to the banks on account of the forged checks.

█ From these statements of facts it will be seen that in both cases the checks were drawn by one agency of Government on another, were issued on fraudulent vouchers to payees to whom the United States owed nothing; in each the names of the payees were forged by a dishonest employee of the United States; in each the United States was negligent in not sooner discovering the frauds; and in each the checks were cashed or deposited in banks and the sum of the checks thereafter paid on demand by the United States on the faith of the Banks' guarantee of all endorsements. This we said in the Washington Loan & Trust Co. case was enough to entitle the United States to recover, notwithstanding the negligence in the issuance of the checks or the unreasonable length of time before discovery of the forgeries, since the Government as drawer and drawee owed no duty to the banks with reference to the endorsements, whereas it was the obligation of the banks, at their peril, to be sure the endorsements which they guaranteed were genuine.

"In other words, the failure of the Government to detect the fraud, though due to negligence, was not the cause of the loss, since in the whole transaction the Government and the bank dealt at arm's length, and the primary obligation of the bank to see to the genuineness of the endorsements continued throughout." 77 U.S.App.D.C. at page 287, 134 F.2d at page 62.

█ And though we noticed and referred to a number of exceptions to the rule which in particular circumstances would bar the drawer or drawee from recovery, we found in that case no facts to bring it within any of the exceptions. We

476

think this is also true of the instant case, but counsel for appellant very earnestly urges that there *are* material differences. One, he insists, is that here the defendant bank was only a collecting agent of the bank in which the checks were first deposited and hence is liable only if it is shown it was itself at fault. Another, that being only a collecting bank and having paid over the proceeds to its principal before notice of the forgery, it is thereby relieved of liability. The first of these points was considered by us in the former case and rejected on the ground, as we have seen, that appellant (bank), as holder, was under a statutory [1] duty to determine the genuineness of the endorsements, and when it presented the checks for payment with a warranty, express or implied, that the endorsements were in all respects regular, it thereby made itself liable to the drawer or drawee if it afterwards was shown that they were forged. Clearfield Trust Co. v. United States, 318 U.S. 363–368, 63 S.Ct. 573, 87 L.Ed. 838. The second, we think, is equally without merit, for it wholly overlooks the fact that nothing appears in the circumstances accompanying the collection to put the Treasury on notice that appellant was acting, as is now claimed, only as collecting agent for the Anacostia Bank. In presenting the checks appellant did not, as it might have done, designate or identify itself as agent or trustee for collection, nor did it represent itself as acting only "for the account" of the Anacostia Bank. Cf. Sec. 36, N.I.L.,D.C.Code 1940, Sec. 28—307, and see Interstate Tr. Co. v. United States Nat. Bank, 67 Colo. 6, 185 P. 260, 10 A. L.R. 705. Instead, it endorsed the checks so as to imply to the drawee that prior payment had been made to and acknowledged by the identical persons named as payees. This warranty the United States was entitled to rely on and did rely on, and since it was false, it is now too late to claim that as presenting bank appellant acted only as agent for another. The unconditional demand for payment was, as we held in the Washington Loan & Trust Company case, a representation of valid title in the demanding bank and a certification that all prior endorsements were regular and valid and entitled the holder to receive the proceeds, Clearfield Trust Co. v. United States, supra. In such circumstances the universal rule is that a general endorsement by the demanding bank is the equivalent that it has valid title to the check and to the proceeds in its own right. If we are correct in thinking this is the rule, then obviously it must make restitution when its warranty is shown to be untrue. See United States v. National Exch. Bank of Providence, 214 U.S. 302, 29 S.Ct. 665, 53 L. Ed. 1006, 16 Ann.Cas. 1184; Insurance Co. v. Fourth Nat. Bank, D.C., 12 F.2d 100; Fulton Nat. Bk. v. United States, 107 F.2d 86; Farmers State Bank v. United States, 5 Cir., 62 F.2d 178; District Nat. Bank v. Washington Loan & Trust Co., 62 App.D.C. 198, 65 F.2d 831; Clearfield Trust Co. v. United States, supra; Hartford-Conn. Trust Co. v. Riverside Trust Co., 123 Conn. 616, 197 A. 766, and cases cited in Washington Loan & Trust Co. v. United States, supra. Appellant's cases have all been carefully reviewed and considered and we think do not change the result.

Affirmed.

---

[1] D.C.Code 1940, § 28—124.