**J. C. HOCKETT CO., etc., Plaintiff-Appellee, v. SIMMONDS, Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7021.    Decided January 10, 1949.

Louis R. Schear, for plaintiff-appellee.
Freiberg & Simmonds, Cincinnati, for defendant-appellant.

**OPINION**

By ROSS, J.:

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, affirming a judgment of the Municipal Court of Cincinnati, in favor of the plaintiff.

The plaintiff, a corporation engaged in the business of owning and operating an elaborate jewelry store in the heart of the business district of the City of Cincinnati, accepted a check drawn by the defendant in payment of a thirty dollar purchase and gave the person presenting and endorsing the check $119.25, the difference between the amount of the purchase, plus tax, and $150.00, the face value of the check. When the check was presented through channels to the drawer's bank for credit it was found that payment had been stopped by the drawer. The Plaintiff now brings this action against the drawer of the check to recover the sum of $150.00, plus interest and costs.

The answer was essentially a general denial.

It appears from the evidence that the defendant was induced to give the check in question to a person who represented herself to be "Sarah McMillan," who was accompanied by another woman. Shortly after such person with her companion had left with the check it was discovered that the consideration for the check did not exist and that the representations made by the women inducing the defendant drawer to part with the check were wholly false and fraudulent. The check was given to the woman representing herself to be "Sarah McMillan" at the request of her companion, late Friday afternoon after banking hours. Payment was stopped on the check by the de-

fendant drawer at the opening of the drawee bank Saturday morning, the next day following. That same Saturday afternoon, after the close of banking hours, two women entered the store of the plaintiff, made a purchase of a pen priced at thirty dollars. One of the women represented to the sales lady that she was "Sarah McMillan" and tendered the defendant's check for $150.00 to the sales lady in payment of her purchase, endorsing the check in the latter's presence, "Sarah McMillan, William H. Taft Road."

It is admitted by all concerned that the person so endorsing the check and tendering it as "Sarah McMillan" was not the person to whom the check was given by the drawer, as "Sarah McMillan." Nor was such endorser present when the check was given to "Sarah McMillan." The payee of the check receiving the check from the drawer defendant, understood by the drawer to be "Sarah McMillan" in no way resembled the endorser of the check from whom the plaintiff's employee received the check. This endorser identified herself to the sales lady by presenting a "billfold", containing a photograph, a driver's license, containing the signature "Sarah McMillan," and "other documents." The "billfold" and its contents were taken to the manager of the store, who authorized acceptance of the check after examination of its contents, and glancing at the endorser. No other attempt was made by the plaintiff's employees to ascertain whether the person, to whom was given the merchandise and the balance of the amount of the check, was the actual payee intended by the drawer.

The trial court found as a fact that the companion of payee at the time the check was delivered by the drawer was the companion of the person who represented herself to be "Sarah McMillan" to the plaintiff's employees, and who endorsed the check, but that the recipient of the check from the drawer was not present in plaintiff's store at the time plaintiff made payment thereon. In other words, the companion of the real payee was also the companion of the endorser of the check who received the value of the check in merchandise and cash from plaintiff's employees.

There was other evidence introduced indicating that this "companion" was present at other times and places when other checks given by the drawer defendant to the payee "Sarah McMillan," coincident with delivery of the $150.00 check herein involved, were cashed by storekeepers, but that these women impersonating the payee were different in each case.

If the plaintiff had paid value upon the endorsement of the actual payee of the check, it would have been protected as a

holder in due course. 10 C. J. Sec. p. 1089, Sec. 494 B. Bills and Notes; 8 Am. Jur. p. 314, Section 602, Bills and Notes.

See: Continental-American Bank & Trust Co v. United States, 161 Fed. (2) 935, 42 Cal. App. (2) 536

The fact remains that the plaintiff did not pay to the actual intended payee of the check, who may have been an imposter. Nothing that the drawer did can be construed as an act misleading the plaintiff into paying to a person other than the real payee.

It is almost inconceivable that astute persons engaged in business, daily dealing with the public, conscious of the prevalence of persons who prey upon the credulity of citizens, could pay a woman entirely unknown, the proceeds of a check, presented after banking hours when it was impossible to check the validity of the instrument presented, and with but a cursory examination of papers, easily forged, which might or might not identify such person. The presence of signs in many establishments upon which is stated "No checks cashed here" indicates that not all persons engaged in business are so credulous.

The law requiring payment to the actual person whom the drawer intends and designates in a check as payee is well established. Beattie v. National Bank of Illinois 174 Ill 571, 43 L. R. A. 654. In this case it is stated at pages 656 and 657, L. R. A.:

"Nothing is better settled than that a forged indorsement does not pass title to commercial paper negotiable only by indorsement, and does not justify the payment of such paper. Here, whether the indorsement of the payee's name was technically a forgery, or was merely a spurious and false indorsement, in either case it was inoperative to change the title to the instrument. Graves v. American Exch. Bank, 17 N. Y. 205. In Graves v. American Exch. Bank, 17 N. Y. 205, it was held that the drawee of a bill of exchange is bound to ascertain that the person to whom he makes payment is the genuine payee, or is authorized by him to receive it, that it is no defense against such a payee that the drawee, in the regular course of business, with nothing to excite suspicion, paid the bill to a holder in good faith and for value, under an indorsement of a person bearing the same name as the payee. There it was said by the court: 'The defendants, on whom the draft was drawn paid it upon the indorsement of another Charles F. Graves, residing at or near La Salle, who wrongfully took it from the postoffice at Mendota. Such a payment, although

made in good faith, did not devest or impair the title of the owner who had not seen or indorsed the paper.' In Mead v. Young 4 T. R. 28, the action was brought by the indorser of a bill of exchange against the acceptor, the bill having been drawn by one Christian on the defendant in London, payable to Henry Davis or order; and having been put into the foreign mail, inclosed in a letter from Christian, it goes into the hands of another Henry Davis than the one in whose favor it was drawn. The defendant accepted the bill, and it was discounted by the plaintiff. It was held that it was competent for the defendant to prove that the person who indorsed to the plaintiff was not the real payee, though he was of the same name, and though there was no addition to the name of the payee on the bill; and it was also held that if a bill of exchange payable to A or order got into the hands of another person of the same name with the payee, and such person, knowing that he was not the real person in whose favor it was drawn, indorsed it, he was guilty of a forgery. In that case Ashhurst, J., said: 'In order to derive a legal title to a bill of exchange, it is necessary to prove the handwriting of the payee: and therefore, though the bill may come by mistake into the hands of another person, though of the same name with the payee, yet his indorsement will not confer a title.' In the same case Buller, J., said: I am of opinion that it is incumbent on a plaintiff who sues on a bill of exchange, to prove the indorsement of the person to whom it is really payable. * * * Now, here it is clear that the indorsement was not made by the same H. Davis to whom the bill was made payable, and no indorsement by any other person will give any title whatever."

In Cohen v. Lincoln Savings Bank, 275 N. Y. 399, at pages 405 and 406 of the opinion it is stated:

"The rule that the payee of the check is the particular person who was intended by the drawer to be the payee can hardly be questioned. The name by which he is designated is merely the tag by which the intended person may be identified. A person, though bearing that name, if not the person intended, has no title to the check and cannot indorse or transfer title to it. (Graves v. American Exchange Bank, 17 N. Y. 205.) When an instrument is made 'payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable,' the instrument is payable to bearer. (Negotiable Instruments Law, Sec. 28, subd. 3.) Even before the Negotiable Instruments Law was adopted, a bill payable

to a fictitious payee was payable to bearer without being indorsed by the maker or the person to whom it was delivered. (Plets v. Johnson, 3 Hill, 112; Central Bank of Brooklyn v. Lang, 1 Bosw. 202; Irving Nat. Bank v. Alley, 79 N. Y. 536.) When the instrument is payable to the order of a fictitious or non-existent person, and the person making it so payable has been induced to believe that he is describing an existing person as payee, no other person can acquire any right or title to the instrument. (United Cigar Stores Co. v. American Raw Silk Co., 184 App. Div. 217; affd., 229 N. Y. 532; Shipman v. Bank of State of New York, 126 N. Y. 318.)

"Every valid instrument which is not payable to bearer must be payable to a determinate payee and where it appears that the maker intended a particular person to be the payee, the payee so intended even though designated by a wrong name and even though he induced the maker to deal with him through fraudulent misrepresentation as to his responsibility, character or name, is the real payee and can by indorsement transfer title to the instrument. 'Although one may be deceived as to the name of the man with whom he is dealing, if he dealt with and intended to deal with the visible person before him the check may properly be indorsed by the impostor.' (Halsey v. Bank of New York & Trust Co., supra, p. 139.)"

We are concerned here with a payer of a check asserting that it is a holder in due course, but upon an admittedly forged indorsement.

The indorser of the check was not the actual payee of the check intended by the drawer to be such payee. In such case, where a person other than the actual payee of a check indorses the same, even though bearing rightfully the name of the payee, the indorsement is ineffective to pass title to a payer and constitute him a holder in due course.

In 8 Am. Jur., p. 319, Section 605, "Bills & Notes" it is stated:

"Thus, where a bill is payable to the order of a person, and another person of the name of the payee obtains possession of it and indorses it to a party who takes it in good faith and for value, such party acquires no title to the bill. If the indorsement so made by a person who is not the real payee, but has the same name as the real payee, is made by such person with full knowledge that he is not the real payee,

and with intent to perpetrate a fraud, his indorsement cannot be regarded otherwise than as a forgery."

In Home Indemnity Co. v. State Bank, 233 Iowa, 103, at page 157 of the opinion it is stated:

"As noted in American Sash & Door Co. v. Commerce Trust Co., supra, 332 Mo. 98, 121, 56 S. W. 2nd. 1034, 1044, checks put in circulation often pass through many hands, and the drawer is not expected to verify the endorsements. 'On the other hand, the bank by the simple expedient of requiring the last indorser to be identified and responsible, can protect itself.' The bank may require that they furnish it security or guaranties to protect it from any loss. As said in Hays v. Lowndes Sav. Bk. & Tr. Co., 118 W. Va. 360, 366, 190 S. E. 543, 545 (quoting from Citizens Nat. Bk. v. Reynolds, 72 Ind. App. 611, 615, 126 N. E. 234, 236):

" 'For its own protection the bank may go further. It may refuse payment until the stranger brings in a person whom the bank knows to be financially responsible and who is willing to become an indorser.' "

"Section 9483 of the 1939 Code is simply a statutory embodiment of a rule of the 'law merchant' evidenced by judicial decisions from the early English courts down through the years. In Tatlock v. Harris, 3 T. R. 174, 181, Lord Kenyon said:

" '* * * there is no doubt, but that the endorsee of a bill of exchange, payable to order, must in deriving his title, prove the hand-writing of the first endorser.'
"A forged endorsement nullifies the instrument as to all parties against whom the forgery is committed. The doctrine of bona fides does not apply to such a holder. He acquires no interest in it, although he may be ignorant of the forgery. The moment such a draft or check is paid by the drawee, the holder becomes liable as for money had and received. As a corollary to this rule, the holder of a check payable to order must trace his title through genuine endorsements, including that of the payee. See 8 Am. Jur., Bills and Notes, 318, 319, sections 604, 605; Citizens Nat. Bk. v. City Nat. Bk., supra, 111 Iowa 211, 216, 82 N. W. 464; annotation, 67 A. L. R. 1535 et seq."

In 10 C. J. Sec. p. 1087, Section 494, Bills and Notes, it is stated:

"One acting on an indorsement must ascertain its genuineness at his own risk; and, where indorsement is essential to recovery, there can be no recovery if it was forged. So forgery of the payee's name is a defense in a holder's action against the payee, maker, or drawer; and a payee whose name has been forged may in proper circumstances recover from the drawer, drawee, or indorsee."

See also (C) p. 1090, Id.

See: **Acceptance Corp. v. Saunders, 50 Oh Ap 123.**

It is true the drawer through negligence may mislead the payer and in such case the drawer is liable to the payer, even though the indorsement may be forgery by a person bearing the same name as the payee.

See, **Weisberger Co. v. Savings Bank, 84 Oh St, 21.** This case is cited in 10 C. J. S. 1090, supra.

In no way did the drawer in the instant case lead the payer to believe that the indorser who forged the payee's name had any right to so indorse the check or attempt to pass title thereto.

The Common Pleas Court sustained its conclusion affirming the judgment of the Municipal Court in favor of plaintiff upon the basis of conspiracy, and authority in the indorser to sign for the real payee, and the "one of two innocent persons" rule. It must be remembered that as far as the actual payee is concerned, the evidence is silent as to what became of her. It requires the employment of conjecture to account for the presence of the check in the hands of the indorser accepted by plaintiff. It is true the "companion" was present, but how, or by what means she secured the check from the actual payee may be only surmised. There is no evidence of either conspiracy or authority. Were the loss to be thrown upon the defendant drawer, it would seem that the gross negligence of the plaintiff in paying such an amount as is herein involved to two strange women on the slightest identification, after banking hours on Saturday afternoon, to a person not the actual payee, would do violence to all the rules applicable to negotiable instruments. Certainly, the use of customary care in requiring introduction and identification of the indorser by a mutual acquaintance, as before noted, would have, to some degree at least, indicated care tending to secure the plaintiff from loss. The absence of the actual payee from this drama is a matter of speculation.

The record in this case fails to show any ground for relief

in the plaintiff under the provisions of Section 8128 of the Ohio Code of Negotiable Instruments. This section provides:

"When a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative. No right to retain the instrument, give a discharge therefor, or to enforce its payment against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

The "one of two innocent persons" rule has no application to these facts. This rule is based upon estoppel. The drawer did nothing to induce the payer to accept a forged indorsement, as has been said hereinbefore. That action was predicated entirely upon the credulity of the plaintiff payer, who failed to use the necessary precaution available to it.

An examination of the record shows no evidence upon which the plaintiff was entitled to recover, and the judgment of the trial court should have been rendered for the defendant in response to the motion of the defendant made at the conclusion of all the evidence.

Judgment may be here rendered for the defendant.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.