# UNION TRUST CO. *v.* SOBLE ET AL.

[No. 92, October Term, 1948.]

428

*Decided March 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Hilary W. Gans,* with whom were *Brown & Brune* on
the brief, for the appellants.

*Bernard S. Melnicove,* with whom was *Sidney A. Needle*
on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The question presented here is whether Charles Soble
and Lillian Soble, his wife, of Baltimore, copartners
trading as "Connie," drawers of a check on the Union
Trust Company of Maryland for the sum of $5,000, pay-
able to Nu-Art Hosiery Company and cashed by an
absconding broker, were precluded in this suit against
the trust company from setting up the broker's want of
authority to indorse the check.

On July 24, 1946, Leonard Gilman, of Washington, the
broker, who had procured for the Sobles for $5,000 cash
a supply of nylon hosiery for their clothing store on
Park Heights Avenue, offered by telephone from Phila-
delphia to procure for them another supply if they would
pay him $5,000 more in cash. Soble accepted the offer,
and instructed his wife to write the check and to mail
it to Gilman at the Benjamin Franklin Hotel, Phila-
delphia. She wrote the check payable to Nu-Art Hosiery
Company and mailed it as she was instructed. Promptly
upon receipt of the check Gilman indorsed it "Nu-Art
Hosiery Co., Leonard Gilman," and succeeded in having
it cashed at the hotel. The check was then indorsed by
the hotel and deposited in the Land Title Bank & Trust

Company. After several bank indorsements, the Union Trust Company accepted the check and charged the sum of $5,000 to the Sobles' account.

The Sobles received the canceled check from the bank about August 1. But they did not receive any hosiery. After waiting in vain for several weeks, Soble phoned to Gilman's home in Washington to inquire concerning the cause of the delay. Gilman was not at home, but his wife promised to call the matter to his attention. On August 23 Gilman telegraphed Soble from Philadelphia: "Prices prohibitive. Will see you Monday 2 p. m." But Gilman did not appear. Accordingly Soble tried to reach him by phone again both in Washington and Philadelphia. On September 19 Gilman telegraphed: "Sorry for the delay. Will see you Saturday." This promise also was not kept, and Soble tried again to reach him by telephone. On September 23 Soble succeeding in reaching him at the Benjamin Franklin Hotel, and then demanded return of the $5,000. Gilman promised to return the money by October 1. However, it was never returned. On October 10 Gilman telegraphed: "Unable to send money for few days."

Soble then went to Philadelphia to confer with Sol Zitman, president of Nu-Art Hosiery Company. Zitman declared that Gilman had no authority to indorse any check for the company. Finally, on November 1, after Gilman had absconded, Soble demanded $5,000 from the Union Trust Company on the ground that the check had been indorsed and cashed by Gilman without authority. The trust company refused the demand, and the Sobles thereupon instituted this suit in the Superior Court of Baltimore City. The trial judge, sitting without a jury, held that the facts in the case did not set up any ground of estoppel, and the plaintiffs were not precluded by any conduct on their part from asserting their claim. Judgment was accordingly entered in favor of plaintiffs for $5,000. From that judgment the trust company appealed.

It is an established rule that when a bank receives money on deposit, it impliedly contracts to pay the de-

positor's checks only to the persons to whom they are made payable or upon their genuine indorsements. A bank on which a check is drawn is bound at its peril to identify the payee and to ascertain that the indorsement on the check is genuine. If the drawer is free from negligence or any conduct warranting his estoppel, the bank cannot charge to his account any check upon which the indorsement has been forged or made without authority. But if the drawer is negligent in some duty owing to the bank, or if he may be charged with conduct in consequence of which the improper payment was made, he must bear the loss. *Hardy v. Chesapeake Bank,* 51 Md. 562, 586, 34 Am. Rep. 325; *Murphy v. Metropolitan National Bank,* 191 Mass. 159, 77 N. E. 693, 114 Am. St. Rep. 595; *National Metropolitan Bank v. Realty Appraisal & Title Co.,* 60 App. D. C. 86, 47 F. 2d 982.

The Negotiable Instruments Law, which codified the law merchant, and was adopted by the Legislature of Maryland in 1898, provides: "Where a signature is forged, or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." Laws of 1898, ch. 119, Code 1939, art. 13, sec. 42; *Beutel's Brannan, Negotiable Instruments Law,* 7th Ed., sec. 23. We interpret the word "precluded" in this section to be synonymous with "estopped." Estoppel, such as will preclude the drawer of a check from setting up the defense of forgery or want of authority in the indorsement, may arise from any conduct, silence, or laches which misled the bank to its prejudice. *Home Credit Co. v. Fouch,* 155 Md. 384, 396, 142 A. 515.

In the instant case Gilman, the broker, came to the Sobles' store on June 20, 1946, and offered to buy for them some nylon hosiery, which at that time was very

scarce and in great demand. Although Soble was informed by another merchant that Gilman was a broker who procured nylon hosiery from sources that were not revealed until it was delivered, he took the risk of giving him $5,000 on first acquaintance. The money was advanced by two checks for $3,000 and $2,000. Gilman cashed the $3,000 check at the Benjamin Franklin Hotel, and delivered the $2,000 check to Nu-Art Hosiery Company. Soble exhibited in the Court below two invoices from Nu-Art Hosiery Company, one for $1,175 and the other for $1,410, each for 100 dozen pairs of stockings. He also exhibited an invoice from another company. Although he had paid $5,000 to Gilman, the three invoices totalled only $3,880. He claimed that he had received four invoices, three of which were from Nu-Art Hosiery Company. However, Sol Zitman, president of the company, swore that there were only two invoices from his company; and Jerome Zimmerman, accountant, swore that there was no record to indicate that an invoice had been lost. Soble's story was not convincing. He said on the stand: "I must confess my stupidity when it comes to figures and about other things." It is apparent that the Sobles, the broker and the hosiery company were confederates in an unusual deal, the scheme of which has not been thoroughly explained.

The second deal was similar to the first. The purchasers were the same; the broker was the same; the amount of money advanced was the same; the kind of merchandise to be purchased was the same; and the source of supply was expected to be the same. The only difference was that the check was made payable to the order of Nu-Art Hosiery Company. It is reasonable to deduce from all the evidence in the case that the Sobles intended Gilman to cash the check in Philadelphia with the co-operation of the hosiery company and to participate in the proceeds.

We are of the opinion that the conduct of the Sobles, especially after the check was cashed and returned to them, precludes them from setting up the broker's forgery

or want of authority to indorse. It is the duty of a depositor in a bank to examine his statement of account and his canceled checks within a reasonable time after he receives them from the bank, and to report to the bank any forgery or unauthorized indorsement that he may discover. If a depositor fails within a reasonable time to notify the bank of any forgery or unauthorized indorsement of which he has knowledge, he is estopped from claiming the amount improperly paid, because the bank is prevented from taking action for its protection either by having the indorser prosecuted or by instituting proceedings for restitution. *Hardy v. Chesapeake Bank,* 51 Md. 562, 587, 34 Am. Rep. 325; *Jordan Marsh Co. v. National Shawmut Bank,* 201 Mass. 397, 87 N. E. 740, 22 L. R. A., N. S., 250; *Frederic A. Potts & Co. v. Lafayette National Bank of Brooklyn,* 269 N. Y. 181, 199 N. E. 50, 103 A. L. R. 1142; *Sprague v. West Hudson County Trust Co.,* 92 N. J. Eq. 639, 114 A. 344, 17 A. L. R. 952; *Showers v. Merchants' National Bank,* 293 Pa. 241, 142 A. 275, 60 A. L. R. 526; *First National Bank of Philadelphia v. Ferrell,* 3 Cir., 272 F. 371, 16 A. L. R. 651. It is not necsary to prove that benefit would certainly have accrued to the bank from an attempt to secure payment from the forger. The law presumes injury to the drawee from the drawer's delay, and will not enter into a calculation as to whether injury did or did not occur to the drawee. In *Leather Manufacturers' National Bank v. Morgan,* 117 U. S. 96, 6 S. Ct. 657, 664, 665, 29 L. Ed. 811, Justice Harlan said of this presumption: "An inquiry as to the damages in money actually sustained by the bank by reason of the neglect of the depositor to give notice of the forgeries might be proper if this were an action by it to recover damages for a violation of his duty. * * * As the right to seek and compel restoration and payment from the person committing the forgeries was, in itself, a valuable one, it is sufficient if it appears that the bank, by reason of negligence of the depositor, was prevented from promptly, and it may be effectively, exercising it."

Plaintiffs relied on *Cosmopolitan State Bank v. Lake Shore Trust & Savings Bank,* 343 Ill. 347, 175 N. E. 583. In that case a depositor in the Cosmopolitan State Bank drew a check payable to the order of an automobile company in Chicago, and gave the check to a salesman, who had been buying cars from the company at wholesale prices, and had agreed to sell an automobile to the drawer at the wholesale price. The salesman indorsed and cashed the check without authority of the company. The bank charged the check to the drawer's account, but the drawer demanded return of the amount, because the check had not been indorsed by the payee. The bank complied with the demand, and then sued the bank which had guaranteed the indorsement by the payee. It was contended by the defendant that the drawer was negligent in not sooner reporting the unauthorized indorsement, because he received the canceled check back from the bank within a month, and failed to notify the bank until three months after the check was charged to his account, and more than two months after he knew or could have known that the dealer had cashed the check. But the Supreme Court of Illinois held (1) that the rights and duties of the parties were not complicated by any question of intention or equities of the parties, and (2) that it was not until after the dealer's place had been closed and the dealer and the automobile had disappeared that the drawer discovered that the check had not been indorsed by the payee, and then he immediately notified the bank of the forgery.

In the instant case the drawers received the canceled check back from the bank about August 1, and, although they had been promised immediate delivery of the hosiery, they received none during the following three months. Instead of preferring a criminal charge against Gilman, Soble took no action against him for two months, except to urge him to deliver the hosiery. It was not until September 23 that Soble asked him to return the money, and it was not until the middle of October that he complained to Zitman. Then, when he found little hope of

recovery from Zitman, he finally sought recovery from the bank. We see no reason why Gilman could not have been arrested if he had indorsed the check without authority. He was registered at the Benjamin Franklin Hotel more than forty days during August, September and October. He then disappeared, and all efforts of the detectives to locate him during the last two years have been futile. We, therefore, find that, after the Sobles received the canceled check from the bank, their delay in giving notice to the bank that Gilman had no authority to indorse the check precluded them from recovering the amount of the check.

*Judgment reversed without a new trial, with costs.*