B. F. SAUL COMPANY, a corporation, Appellant,

v.

RICH WINE AND LIQUOR COMPANY, a corporation, trading as Woodward Liquors, Appellee.

No. 1736.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 9, 1956.

Decided Feb. 10, 1956.

William H. Clarke, Washington, D. C., with whom Richard W. Galiher and William E. Stewart, Jr., Washington, D. C., were on the brief, for appellant.

William H. Collins, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Plaintiff, Woodward Liquors, cashed a number of checks bearing indorsements forged by defendant's employee, Robert George. This suit for repayment of its loss was brought against the defendant-employer, B. F. Saul Company, as drawer of the checks, charging that plaintiff's loss was due to the method of placing the checks in the hands of George and also to failure to maintain proper supervision of the distribution of the checks. The trial judge found for plaintiff and defendant brings this appeal.

The facts are not in dispute. Defendant Saul Company is engaged in the mortgage loan and real estate business, employing approximately 250 persons. Among these was Robert George, first employed in 1939 as a janitor and in 1942 promoted to supervising janitor of defendant's office building. At the time of his employment defendant investigated his background and checked his references. Throughout his employment, both as janitor and later as supervising janitor, George's work was nothing but "satisfactory" and he was regarded as a "trusted employee" until August 1953 when the forgeries in question were discovered.

In his capacity as supervising janitor George was in charge of several of defendant's part-time employees who assisted him in janitorial work. These employees varied from time to time and were hired and dis-

charged largely on George's recommendation, although always subject to defendant's approval. Since they worked at night, George was relied upon to record their time and to put their names on the payroll. Defendant made no further check as to whether or not they had actually worked and, if so, over what period. Pay checks were drawn on the basis of George's reports and delivered to him for distribution to these employees.

Sometime prior to June 1952, Rubin Modis, one of the part-time employees, inquired of George about the possibility of opening a savings account with the Saul Company. George agreed to "arrange it" and to place all Modis' subsequent pay checks in the account. Over the period from June 1952 through July 1953, twenty-five checks were issued to Modis and delivered to George as described above. But, instead of depositing them as agreed, George forged Modis' indorsement and cashed them at plaintiff's liquor store. During the same period, George also forged a total of five pay checks of three other part-time employees whose names he had placed on the payroll, but who then had no money coming to them. These checks were also cashed by plaintiff.

George had been a customer of plaintiff's liquor store for about a year before he began the forgeries. When the checks bearing the forged indorsements were presented by George, he would produce a list containing the names of the payees of each check and indicating the amount of cash or merchandise each employee purportedly wished to obtain. George would indorse his name under the purported indorsement of the payee and give the check to plaintiff, who prepared individual envelopes for each employee, attaching thereto the adding machine tapes indicating the cost of their purchases. The balance in cash would then be placed in each envelope and delivered to George.

All the checks were deposited by plaintiff in its bank and forwarded to defendant's bank for payment. When, in August, 1953, the forgeries were discovered, the amount represented by the forged checks was recredited to defendant's account and in turn charged back to plaintiff's account.

Two officials of plaintiff company testified that before they cashed any checks for George they called defendant to verify his employment there. They also said that inquiries concerning George were made about the neighborhood. It was admitted that with the exception of Rubin Modis none of the payees were known to them and that no attempt was made to determine the genuineness of any of their indorsements as they appeared on the checks in question. They also testified that it was at their request that George also indorsed his name on the checks and that this was done so plaintiff would have a signature on the checks which they knew and which they "could go back on."

Saul's bookkeeper testified that the company issued approximately 6,000 checks each month and that the cancelled checks were examined monthly against the carbons of each check; also that their reverse sides were inspected to determine whether the first indorsement corresponded with the payees' name, and they were then checked against the bank balance. The stipulated testimony of defendant's auditor was that the accounting system used by defendant was in accordance with good accounting practice in the District of Columbia.

The trial judge found that in requiring George's indorsement plaintiff was not relying on his credit as an individual but on the fact of his employment with Saul Company; that Saul failed to examine the cancelled checks beyond the first indorsement; and that in " * * * conducting its business * * * defendant was guilty of negligence and that such negligence * * * made it possible for its employee, Robert George, to defraud the plaintiff." The judge invoked the rule that when one of two innocent parties is injured by the wrongful act of a third, the one whose negligence or inadvertence made the injury possible must bear the loss.

Defendant assigns many errors, but the substance of them all is that the trial judge

erred in applying the law to the facts of the case.

Although plaintiff's complaint sounds in negligence, it is clear that the suit was on checks cashed on the basis of forged indorsements. The situation is therefore governed by the applicable sections of the negotiable instruments law, as enacted into D.C.Code, § 28–124. That section provides in effect that a person acquiring an instrument under a forged indorsement has no right to enforce its payment against any party thereto unless such party is "precluded" from setting up the forgery as a defense.

▉▉▉ In this jurisdiction,[1] as well as in a majority of others,[2] "precluded" as used in such statutes has been held synonymous with "estopped," referring to conduct which has misled a holder to his prejudice. While negligence is considered a basis for such estoppel our jurisdiction, like most others, has taken the position that it must be such negligence as directly and proximately affects the conduct of the party in passing the forged instrument: that is, it must contribute to or induce the acceptance of the check under the forged indorsement; and that it must be negligence which has lulled the party paying on the forged indorsements in relaxing its vigilance against forgeries.

Thus in National Metropolitan Bank v. Realty Appraisal & Title Co., 60 App.D.C. 86, 47 F.2d 982, the court said that although the drawer was negligent to some degree, its negligence bore no relation to the conduct of the bank when it paid forged checks; that because it accepted and paid the checks on the faith it had in the indorser, the paying bank was itself negligent and was not misled by the drawer's negligence.

Later, in Washington Loan & Trust Co. v. United States, 77 U.S.App.D.C. 284, 134

F.2d 59, it was held that the fraud of a trusted employee does not always fix the loss on his innocent principal as against an injured third person, though the principal was shown to have been careless. The court said that the negligence must be such as directly and proximately affected the conduct of the bank, contributing to or inducing its acceptance of the forged check; also, that the forgery was entirely distinct from the issuance of checks on false demands and there was no relation between them.

The same result was reached in Callaway v. Hamilton Nat. Bank of Washington, supra note 1, where the court ruled no liability where there is no showing that the drawee relied upon facts sufficient to estop the drawer. To the same effect also is District Nat. Bank of Washington, D. C. v. Washington Loan & Trust Co., 62 App.D.C. 198, 65 F.2d 831.

The cases just cited reflect the view adopted by a majority of courts. See, e. g., Home Indemnity Co. of New York v. State Bank of Fort Dodge, 233 Iowa 103, 8 N.W. 2d 757; United Motor Car Co. v. Mortgage & Securities Co., 13 La.App. 385, 128 So. 307; Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 87 N.E. 740, 22 L.R.A.,N.S., 250; New York Cas. Co. v. Sazenski, 240 Minn. 202, 60 N.W.2d 368; Fitzgibbons Boiler Co. v. National City Bank, 287 N.Y. 326, 39 N.E.2d 897; J. C. Hockett Co. v. Simmonds, 84 Ohio App. 467, 87 N.E.2d 739.

It is true that most of the cases involving these principles deal with parties in the relation of drawer and drawee. But there seems to be no logical reason to apply a different rule to a situation between drawer and indorsee. The drawer cannot be said to owe a greater duty to a remote indorsee than he does to his drawee.

▉▉▉ Because of what we have said, we must hold that the trial judge erred in his

1. Callaway v. Hamilton Nat. Bank of Washington, 90 U.S.App.D.C. 228, 195 F. 2d 556.

2. See, e. g., Union Trust Co. v. Soble, 192 Md. 427, 64 A.2d 744; Scott v. First Nat. Bank in St. Louis, 1938, 343 Mo. 77, 119 S.W.2d 929; Coffin v. Fidelity-Philadelphia Trust Co., 374 Pa. 378, 97 A.2d 857, 39 A.L.R.2d 625 and note at page 641.

conclusion that it was negligence for defendant not to examine all the indorsements on its cancelled checks for forgery or suspicious indorsements. This ruling was plainly out of harmony with Washington Loan & Trust Co. v. United States, supra, and the other cases we have cited. Unless there are suspicious circumstances known to the drawer, he generally is under no duty to examine checks for forged indorsements on their return from the bank. This is because he cannot be expected to know the signatures of his payees. As was said in Sprague v. West Hudson County Trust Co., 92 N.J.Eq. 639, 114 A. 344, 345, 17 A.L.R. 952: " * * * we have never heard that this duty extended to others than the bank. Persons into whose hands a check may come before payment take the risk of forged signatures and forged indorsements, preceding their own. * * * There was no privity between them [plaintiffs] and [the drawer] * * *." The same view was expressed in American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034, and also in Detroit Piston Ring Co. v. Wayne County & Home Sav. Bank, 252 Mich. 163, 233 N.W. 185, 75 A.L.R. 1273, where it was held that the drawer had no duty to compare returned checks with employment cards or time cards or any records of his office, except his checkbook or register.

█ The trial judge also found Saul negligent in entrusting checks to George for disbursement, and for employing an accounting system which permitted him to fraudulently requisition checks when in fact it was not indebted to the named payees. On this point the decisions are more in conflict. While there is some authority supporting the trial court's position,[3] the substantial weight of authority seems to be that entrusting checks to trusted employees is not such negligence as will "preclude" the drawer.[4] The same is true as to employing a business practice or system which gives room for the practice of such fraud as in the instant case.[5] Thus in Land Title Bank & Trust Co. v. Cheltenham Nat. Bank, supra [362 Pa. 30, 66 A.2d 771], it was stated: " * * * there is nothing irregular in entrusting a check to a person in order to deliver it to the payee, in the absence of any good ground for belief that he would make a fraudulent use of it. If such a person indorses the name of the payee without authority, and a bank cashes the check for him on his forged indorsement, it, and not the drawer, is at fault, for there is no duty on the part of the drawer to see to it that a person who may turn out to be a forger does not get possession of the check." Similarly, in Los Angeles Inv. Co. v. Home Sav. Bank, supra [180 Cal. 601, 182 P. 297], the court held: " * * * trust must be placed in some one * * * and necessarily in the heads of departments. If trusting them in regard to demands for checks for disbursements regular upon their face is negligence, so it would be negligence to trust them in a hundred other ways in which it is within their power to defraud their employer. Business could not be conducted on any such basis." This case was cited and quoted in Washington Loan & Trust Co. v. United States, supra.

3. United States Guarantee Co. v. Hamilton Nat. Bank, 189 Tenn. 143, 223 S.W. 2d 519; Defiance Lumber Co. v. Bank of California, 180 Wash. 533, 41 P.2d 135, 99 A.L.R. 426.

4. Callaway v. Hamilton Nat. Bank of Washington, supra; Washington Loan & Trust Co. v. United States, supra; City Bank v. Hamilton Nat. Bank of Washington, 71 App.D.C. 225, 108 F.2d 588; United States Fidelity & Guaranty Co. v. First Nat. Bank in Dallas, 5 Cir., 172 F.2d 258; Borserine v. Maryland Casualty Co., 8 Cir., 112 F.2d 409; Los Angeles Inv. Co. v. Home Sav. Bank, 180

Cal. 601, 182 P. 293, 5 A.L.R. 1193; Allan Ware Pontiac, Inc., v. First National Bank, La.App., 2 So.2d 76; Jordan Marsh Co. v. National Shawmut Bank, supra; Land Title Bank & Trust Co. v. Cheltenham Nat. Bank, 362 Pa. 30, 66 A.2d 768.

5. No case has been found where delivery to the employee of a check made payable to one to whom the drawer was actually indebted is distinguished from those cases where checks are delivered to the employee on his fraudulent representation that drawer is indebted to the payee named in the check.

While the trial judge could have found, as he did, that in cashing the checks plaintiff relied on the fact of George's employment with Saul rather than his credit as an individual, there was no showing, and the judge did not find, that plaintiff relied on or even knew of Saul's practice of delivering the checks to George. Nor was there any showing that plaintiff, at the time it cashed the checks, was aware that under Saul's accounting practices it was possible for George to fraudulently requisition checks. In this respect our case parallels Washington Loan & Trust Co. v. United States, supra.

■ ' Under such circumstances, plaintiff's action in cashing the checks was totally unrelated to and unaffected by defendant's conduct in issuing the checks, and it cannot be said that plaintiff was directly and proximately affected by defendant's conduct within the meaning of Section 28–124 of our Code. As such section is interpreted by a large majority of courts it was plaintiff's acceptance of the checks without investigation and at its peril which must be said to have occasioned the loss.

We cannot agree with the trial judge in his application of the rule that as between two innocent persons the one whose conduct placed it in the power of a third party to occasion the loss must suffer. The application of the doctrine in such cases was expressly rejected in Washington Loan & Trust Co. v. United States, supra, and National Metropolitan Bank v. Realty Appraisal & Title Co., supra.

■ It appears that the rule is properly applied only when a check is issued and made payable to an "imposter." In such cases, as between drawer and drawee, the courts reason that since the drawee in fact paid the party whom the drawer intended, and the indorsement cannot be considered forged, the drawee violated no duty; and that the drawer, having allowed the fraud to be perpetrated, must, as between two innocent parties, suffer the loss. See Central Nat. Bank of Washington City v. National Metropolitan Bank, 31 App.D.C. 391, 17 L.R.A.,N.S., 520. See also, Note, 22 A.L.R. 1228; 52 A.L.R. 1326; 112 A.L.R. 1435.

From all that we have said it follows that the decision of the trial court was erroneous, and that defendant should have judgment entered in its favor.

Reversed.